983 A.2d 627

Arthur W. HUNT, Appellee

v.

PENNSYLVANIA STATE POLICE OF the COMMONWEALTH
of Pennsylvania, Appellant.

Arthur W. Hunt, Cross Appellant

v.

Pennsylvania State Police of the Commonwealth
of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 3, 2008.

Decided Aug. 17, 2009.

158

Barbara L. Christie, Esq., Joanna Reynolds, Esq., Harrisburg, for State Police of the Commonwealth of Pennsylvania, Appellant (No. 40 MAP 2007).

William Dudeck, Esq., Eastburn and Gray, P.C., Doylestown, for Arthur W. Hunt, Appellee (No. 40 MAP 2007).

William Dudeck, Esq., Eastburn and Gray, P.C., Doylestown, for Arthur W. Hunt, Appellant (No. 46 MAP 2007).

Barbara L. Christie, Esq., Joanna Reynolds, Esq., Harrisburg, for State Police of the Commonwealth, Appellee (No. 46 MAP 2007).

CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice TODD.

In this direct appeal, we consider, *inter alia*, whether Appellant/Cross–Appellee Pennsylvania State Police ("State Police") has standing to challenge, via preliminary objections raised in a mandamus action, the merits of a trial court's order requiring the expungement of a criminal record pursuant to the Criminal History Record Information Act ("CHRIA or 'Act' "").[1] For the reasons that follow, we find the State Police lacks standing, and, thus, affirm in part the order of the Commonwealth Court. As described below, we also remand the matter for further proceedings consistent with this opinion.

The facts underlying this appeal are as follows. On May 22, 2006, Appellee/Cross–Appellant Arthur W. Hunt ("Hunt") petitioned the Court of Common Pleas of Bucks County to expunge his criminal record.[2] Thirty years earlier, in 1976,

1. 18 Pa.C.S.A. §§ 9101 *et seq.*

2. Specifically, Hunt requested the trial court "to expunge his arrest and other criminal records in light of his having successfully satisfied all

Hunt successfully completed Accelerated Rehabilitative Disposition ("ARD") for the underlying crimes of which he was convicted—indecent assault,[3] indecent exposure,[4] and corruption of minors.[5] Hunt had not been arrested or convicted of any offenses in the three decades following his convictions and his successful completion of ARD. The District Attorney of Bucks County did not oppose Hunt's petition for expungement. On July 6, 2006, the trial court ordered the State Police, and, *inter alia*, other local and federal law enforcement agencies, to expunge Hunt's criminal record due to his successful completion of the conditions imposed upon him in connection with the ARD program.[6] No appeal was taken by the District Attorney.

The State Police refused to comply with the trial court's order. Rather, it requested the Bucks County District Attorney to file a motion to vacate the trial court's order *nunc pro tunc*. According to the State Police, the trial court's order was illegal and in violation of Section 9122(b.1) of CHRIA. 18 Pa.C.S.A. § 9122(b.1). Section 9122(b.1), the effective date of which was April 22, 1997, provides that a trial court shall not have the authority to order expungement of a defendant's record where such defendant, like Hunt, was placed on ARD for, *inter alia*, indecent assault, where the victim was under 18 years of age. *Id.* The District Attorney agreed to file a motion to vacate *nunc pro tunc*. Thereafter, on September 19, 2006, the trial court rescinded Hunt's expungement order.

By order dated October 19, 2006, however, the Court of Common Pleas of Bucks County rescinded its prior order and again entered an order directing expungement. The trial

conditions imposed upon him in connection with his placement into accelerated rehabilitative disposition for charges that were filed against him by [the] Doylestown Township's [sic] [P]olice [D]epartment on or about February 9–10, 1976." Petition for Review at 2.

3. 18 Pa.C.S.A. § 3126.

4. 18 Pa.C.S.A. § 3127.

5. 18 Pa.C.S.A. § 6301.

6. By way of amended order dated August 3, 2006, the trial court brought its July 6, 2006 order into compliance with the requirements of Pa.R.Crim.P. 722 "Contents of Order for Expungement."

court noted Hunt's sentence was completed 20 years before the statute became effective and reasoned Section 9122(b.1) was not to be applied retroactively. The Bucks County District Attorney did not appeal this order. Again, the State Police refused to comply with the trial court's order.

On January 30, 2007, as a result of the State Police's second refusal to comply with the trial court's order to expunge his criminal record, Hunt filed a Petition for Review in the original jurisdiction of the Commonwealth Court, both under CHRIA and in the nature of mandamus, to compel expungement. Specifically, Hunt requested: an order directing the State Police to comply with the trial court's expungement order; actual and real damages; reasonable costs of litigation; counsel fees; and exemplary and punitive damages. Petition for Review at 5. In the alternative, Hunt requested a writ in mandamus compelling expungement. Petition for Review at 6. The same day, Hunt filed an Application for Summary Judgment in which he asserted the State Police "has no standing to object to, let alone willfully and repeatedly disobey, an order of expungement of an arrest record." Application for Summary Relief at 2.

On March 1, 2007, the State Police filed preliminary objections, claiming Hunt's Petition for Review failed to state a claim upon which relief could be granted. Specifically, the State Police contended it could not comply with the trial court's order, as Section 9122(b.1) precluded expungement and the trial court erroneously concluded this provision was not retroactive to prohibit expungement of offenses prior to its effective date. The State Police also alleged that, when Hunt completed ARD in 1976, there was no automatic entitlement to expungement of one's criminal record. According to the State Police, as there was no clear right to expungement, there was no corresponding duty for the State Police to expunge Hunt's criminal record.

The Commonwealth Court, by Judge Dan Pellegrini, filed an unpublished single judge order and opinion, concluding the State Police lacked standing to contest the expungement order. Thus, the court overruled the State Police's prelimi-

nary objections and granted Hunt's motion for summary judgment.

Specifically, Judge Pellegrini reasoned our recent decision in *J.H. v. Commonwealth*, 563 Pa. 248, 759 A.2d 1269 (2000), was dispositive. Noting *J.H.* involved a virtually identical factual scenario concerning the State Police's refusal to expunge a criminal record, Judge Pellegrini found the law clear that, because the General Assembly did not confer standing on the State Police, and because the State Police was a mere depository of criminal records that it received from reporting agencies, the State Police did not have standing to contest the trial court's expungement order. Based upon this binding precedent, Judge Pellegrini ordered the State Police to comply with the trial court's October 19, 2006 order.

As Judge Pellegrini found the law to be plain, and the State Police "obdurately refused to comply with the trial court's order," Commonwealth Court Op. at 5, he awarded Hunt $6,069 in counsel fees, noting the State Police did not actively oppose the award to such fees as it was apparently "interested in having a vehicle for the Supreme Court to reconsider *J.H.*" *Id.* at 5 n. 4. The court, however, denied Hunt's request for an award of punitive damages, concluding the Commonwealth was not subject to such damages.

The State Police appealed the Commonwealth Court's decision, raising the issue of whether the Commonwealth Court erred when it concluded the State Police lacked standing to contest the expungement of a criminal record in the context of a mandamus action.[7] State Police Brief at 4. The State Police also asks the related question of whether the Commonwealth Court erred when it implicitly held the State Police violated CHRIA when it refused to comply with the order directing the

7. We have jurisdiction over this matter pursuant to Section 723(a) of the Judicial Code which provides that the Pennsylvania Supreme Court "shall have exclusive jurisdiction of appeals from final orders of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a magisterial district judge or another government unit." 42 Pa.C.S.A. § 723(a).

expungement of a criminal record. *Id.* Hunt filed a cross-appeal challenging the denial of his claim for actual and punitive damages. Hunt Brief at 1.[8]

■■■■ Initially, we note our Court is reviewing the Commonwealth Court's denial of the State Police's preliminary objections and the granting of Hunt's motion for summary relief in the context of a mandamus action. Appellate review of the denial of preliminary objections is limited to a determination of whether there was an error of law. *Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 239, 961 A.2d 96, 101 (2008). Similarly, the granting of summary judgment is reviewed by an appellate court for errors of law or an abuse of discretion. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 585, 812 A.2d 1218, 1221 (2002). As the issues of standing and the award of damages against the Commonwealth are all questions of law, for each issue, our standard of review is *de novo*, and our scope of review is plenary. *In re Hickson*, 573 Pa. 127, 134, 821 A.2d 1238, 1242 (2003); *accord Feingold v. SEPTA*, 512 Pa. 567, 517 A.2d 1270 (1986).

We begin with the threshold issue of whether the State Police has standing to challenge, via preliminary objections in a mandamus action, the merits of an order expunging a criminal record.[9] As our analysis involves interpreting

**8.** The issues as stated by the State Police in its appeal are:

 1. Did the Commonwealth Court err as a matter of law when it held that the Pennsylvania State Police lacked standing to contest the expungement of a criminal record in the context of a mandamus action filed against the agency?

 2. Did the Commonwealth Court err as a matter of law when it implicitly held that the Pennsylvania State Police violated the Criminal History Record Information Act, when the agency, pursuant to 18 Pa.C.S. § 9122(b.1), refused to comply with an order directing the expungement of criminal records of indecent assault, where the victims were under 18 years of age?

 The issue as stated by Hunt in his cross-appeal is:

 Whether an individual who has successfully proven a law enforcement agency's willful violation of the Criminal History Records Information Act is entitled to actual and real damages of at least $100.00 as well as exemplary and punitive damages of at least $1,000.00 but not more than $10,000.00.

**9.** While Hunt's Petition for Review concerning the enforcement of the trial court's expungement order contains two counts—one for a viola-

CHRIA, we initially consider the dictates of the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501 *et seq.*

■■ The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). Our Court has found that the best indication of the General Assembly's intent is the plain language of the statute. *Martin v. Commonwealth, Dep't of Transportation, Bureau of Driver Licensing,* 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see Commonwealth v. Conklin,* 587 Pa. 140, 152, 897 A.2d 1168, 1175 (2006). Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921(c). 1 Pa.C.S.A. § 1921(c); *Koken v. Reliance Ins. Co.,* 586 Pa. 269, 288, 893 A.2d 70, 81 (2006).

With these principles in mind, we turn to the arguments of the parties. The State Police contends it has standing to contest the trial court's expungement order because this matter arises from a petition in mandamus filed by one seeking enforcement of an expungement order, whereas *J.H.,* relied on by the Commonwealth Court, arose in the context of a motion to compel. Specifically, the State Police offers that, in *J.H.,* the appeal arose from a motion to compel filed before the trial court. Here, the matter arose as a result of a petition for review in mandamus, filed in the original jurisdiction of the Commonwealth Court. Citing *Fajohn v. Commonwealth,* 547 Pa. 649, 692 A.2d 1067 (1997), the State Police contends mandamus is not available to compel an agency to engage in an illegal act. According to the State Police, the order directing expungement is without legal authority, and, thus,

tion of CHRIA and one in mandamus—it is clear Hunt is not invoking the Commonwealth Court's appellate jurisdiction with respect to his claim based on CHRIA, as he was successful before the trial court. Thus, Hunt's Petition for Review, invoking the original jurisdiction of the Commonwealth Court, is in substance, one sounding in mandamus, and therefore, we treat it accordingly.

the State Police should have standing to contest "this patently illegal order." State Police Brief at 15. Furthermore, the State Police claims this case involves an order of expungement of an arrest that resulted in placement in a pre-trial diversionary program. Pursuant to Section 9122(c) of CHRIA, the State Police, acting as a central repository, is charged with maintaining a list of the names and other criminal history record information of persons whose records are required by law or court rule to be expunged where the individual successfully completed the conditions of any pretrial or post-trial diversion or probation program. As this information is to be used to determine subsequent eligibility for such programs and for identifying persons in criminal investigations, the State Police asserts it has standing.

Additionally, the State Police maintains it has standing because it has been aggrieved by an action or order. According to the State Police, in its role as the keeper of records, it would be prevented from retaining the record of a sexual offender whose victims were minors. The State Police further explains Hunt could commit other offenses against minors, and seek ARD to which, according to the State Police, he would not be entitled. Also, since there would be no record of his previous crimes, the State Police would be harmed by not being able to investigate future crimes committed by Hunt. Furthermore, the State Police contends, because Hunt's expungement involves "more serious sexual offenses within the context of duties placed on the state police in its recordkeeping and investigative capacity," that it is distinguishable from the situation in *J.H.* in which expungement concerned a summary conviction. State Police Brief at 16. Finally, the State Police asserts standing should be granted because it is aggrieved by the Commonwealth Court's order imposing attorney's fees.

Hunt retorts the State Police does not have standing to contest the validity of the trial court's expungement order. Specifically, Hunt offers our decision in *J.H.*, which stands for the proposition that the State Police does not have standing to contest the validity of an underlying expungement order, is

controlling. Hunt emphasizes the arguments advanced by the State Police in *J.H.*, and rejected therein, are the same arguments it makes in the appeal *sub judice*. As no compelling reasons are present to overrule *J.H.*, and circumstances have not changed, Hunt asserts our decision in *J.H.* requires affirmance of the Commonwealth Court's order. Furthermore, Hunt counters the State Police's argument that this matter arises in a procedurally distinguishable fashion that grants it standing, by pointing to our Court's conclusion in *J.H.* that "standing is not conferred via a party's relationship to the proceedings." *J.H.*, 563 Pa. at 253, 759 A.2d at 1271. According to Hunt, the State Police has no more interest in the subject matter of his expungement than it did in *J.H.*; thus, the order of the Commonwealth Court should be affirmed.

■■■ By way of background, in Pennsylvania, expungement is governed by statute. CHRIA sets forth the process by which a person may expunge his or her criminal history record. 18 Pa.C.S.A. § 9122. In general terms, expungement is simply the removal of information so that there is no trace or indication that such information existed. 18 Pa.C.S.A. § 9102.[10] Criminal history record information may be expunged when an individual reaches 70 years of age and has been free of arrest or prosecution for 10 years following final release from confinement or supervision or the individual has been dead for 3 years. 18 Pa.C.S.A. § 9122(b). Relevant for purposes of this appeal, the State Police is the central repository, i.e., the central location for the collection, compilation,

---

**10.** "Expunge" is defined as:

(1) To remove information so that there is no trace or indication that such information existed;

(2) to eliminate all identifiers which may be used to trace the identity of an individual, allowing remaining data to be used for statistical purposes; or

(3) maintenance of certain information required or authorized under the provisions of section 9122(c) (relating to expungement), when an individual has successfully completed the conditions of any pretrial or postrial diversion or probation program.

18 Pa.C.S.A. § 9102.

maintenance, and dissemination of criminal history record information. *Id.*

■ With respect to the State Police's standing, as the words employed in a statute are the clearest indication of the legislature's intention, we first direct our attention to the language of the CHRIA. The statute itself confers standing on the district attorneys of the various counties for purposes of expungement, but does not confer standing on the State Police:

> **The court shall give ten days prior notice to the district attorney of the county where the original charge was filed of any applications for expungement** under the provisions of subsection (a)(2) [relating to a court order requiring expungement of nonconviction data].

18 Pa.C.S.A. § 9122(f) (emphasis added).

Related thereto, the General Assembly requires notice to be provided to the State Police only *after* an expungement has been granted. 18 Pa.C.S.A. § 9122(d) ("Notice of expungement shall promptly be submitted to the central repository which shall notify all criminal justice agencies which have received the criminal history record information to be expunged."). Considering Section 9122, read as a whole, it is plain the General Assembly intended that the district attorney of the county where the original charge was filed has standing to challenge an application for expungement.[11] Moreover, by providing notice to the State Police, as the central repository, only *after* an expungement order is granted, CHRIA does not contemplate State Police standing to challenge an expungement application. The General Assembly certainly knows how to confer standing upon a party. We conclude that the language of CHRIA itself compels a finding that the State Police does not possess standing to challenge an expungement order.

11. We also note CHRIA provides the Attorney General with the power to "[m]ake investigations concerning all matters touching the administration and enforcement of this chapter and the rules and regulations promulgated thereunder." 18 Pa.C.S.A. § 9161(3).

Our conclusion regarding the General Assembly's intent concerning standing also is strongly informed by our recent case law addressing the issue of the standing of State Police to challenge an expungement order. Nine years ago, in *J.H.*, our Court spoke to a virtually identical issue and held the State Police was not aggrieved by an order to expunge the relevant criminal records or by an order compelling it to expunge those same records.

Specifically, in *J.H.*, the Court of Common Pleas of Montgomery County addressed J.H.'s application to expunge his criminal record for a summary offense. The Commonwealth was represented by the district attorney's office in the proceedings that followed. The trial court granted the application, and all agencies complied with the expungement order except the State Police. J.H. petitioned the trial court for an order to compel expungement. The court issued a rule to show cause to the district attorney and the State Police as to why the petition to compel should not be granted. The district attorney joined in J.H.'s petition. Thereafter, the trial court entered an order to compel expungement and the State Police appealed to the Superior Court. The Superior Court reversed the order compelling expungement and remanded.

On appeal, our Court reversed and held the State Police was without standing to contest an underlying expungement order. Initially, the Court engaged in an analysis similar to that above, recognizing the notice provision of CHRIA required *prior* notification only to the district attorney of the county where the original charge was filed. We concluded "as the Act does not require notification of the State Police until after an expungement order has been entered, standing does not derive from the statute." *Id.* at 251, 759 A.2d at 1270. Furthermore, as CHRIA defined and described expungement, we rejected "the State Police's assertion that compliance with the expungement order would cause it to fail in its statutory mandate to provide complete and accurate records." *Id.*[12]

12. Then–Justice Cappy, joined by then-Justice Castille, concurred, agreeing that the State Police did not have standing to challenge the propriety of an expungement order under CHRIA. The concurring

We continued to consider non-statutory standing. We began by setting forth traditional notions of standing, requiring a party be aggrieved, meaning a substantial, direct, and immediate interest in the subject matter of the litigation. *Id.* at 252, 759 A.2d at 1271 (citing *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975)). We concluded because the State Police played only a ministerial role in the collection of data, the State Police's interest in an expungement hearing was insufficient to grant it standing to argue the underlying merits of the expungement order. *Id.* at 252, 759 A.2d at 1271 (citing *Pennsylvania State Police v. Bucks County*, 150 Pa.Cmwlth. 338, 340, 615 A.2d 946, 947 (1992) *aff'd per curiam*, 533 Pa. 324, 623 A.2d 814 (1993)).

Importantly for purposes of this appeal, we acknowledged that the procedural underpinnings of the matters in *Bucks County* and *J.H.* were distinct. In *Bucks County*, the appeal arose as a result of the State Police filing a petition for review, to avoid a contempt proceeding on the basis that it believed its duties under CHRIA precluded it from complying with the expungement order, and seeking a declaration that the trial court had no power to issue an order requiring the State Police to expunge certain records and that the order was not enforceable. The court in *Bucks County* held that the State Police lacked standing to object to an expungement request. *Bucks County*, 150 Pa.Cmwlth. at 340, 615 A.2d at 947. Conversely, in *J.H.*, the appeal arose from J.H. having to file a petition to compel expungement. Nevertheless, our Court rejected this basis for standing, holding "standing is not conferred via a party's relationship to the proceedings." *Id.* at 253, 759 at 1271.

Justices would have ended the analysis there, however, explaining that as the State Police only functioned as a repository for the maintenance of criminal record history information, and the legislature explicitly conferred standing for purposes of expungement only on district attorneys of the relevant counties where expungement was sought, "there can be no implicit finding that the legislature conferred standing on the State Police to interject itself as an aggrieved party in a court action for expungement." *Id.* at 255, 759 A.2d at 1272.

Finally, we rejected the State Police's argument that it was an aggrieved party because the trial court was without authority to issue the underlying expungement order and that following such an order would harm the State Police by forcing it to violate its alleged statutorily-mandatory duty. *Id.* We noted the common pleas court, with the district attorney representing the interests of the Commonwealth, made a full and final adjudication of the underlying petition. That being the case, the State Police was not aggrieved "either by the order to expunge [J.H.'s] criminal record, or by the order compelling it to expunge the same records." *Id.* at 253, 759 A.2d at 1271–72.

We find *J.H.* to be dispositive of the question of State Police standing, and we reaffirm our holding in *J.H.* that the State Police has no standing to challenge the merits of an order expunging a criminal record.[13] Specifically, as noted above, CHRIA provides standing to the district attorney but does not do so for the State Police. Furthermore, the State Police is simply not aggrieved as its duties under the Act are of a ministerial nature as the central repository. Additionally, the General Assembly, in its wisdom, has provided for the interests of the Commonwealth to be protected by the district attorney and the Attorney General's office. We have every confidence that these entities envisioned by the General Assembly to be participants in the expungement proceedings are well-equipped for the task of protecting our citizenry.

**13.** The clarity of our holding in *J.H.* is reflected by the Commonwealth Court cases following our decision on the subject of standing by the State Police. *See Pennsylvania State Police v. Izbicki,* 785 A.2d 166, 169 (Pa.Cmwlth.2001) ("Essentially, [the State Police] is attempting to attack the validity of Izbicki's expungement. As [the State Police] conceded at oral argument before this Court, the law is clear that [the State Police] lacks standing to challenge the validity of an expungement order."); *Pennsylvania State Police v. Rush,* 773 A.2d 1277, 1279–80 (Pa.Cmwlth.2001) ("[The State Police] challenges the validity of the trial court's partial expungement order and places heavy emphasis on the fact that it was not notified of, nor was it a party to, Rush's expungement proceedings before the trial court. At the same time [the State Police] concedes that even if it had been given proper notice, it was without standing to object to Rush's petition for partial expungement before the trial court.").

The arguments the State Police advances in this appeal were directly addressed and rejected in *J.H.* Specifically, the State Police claims that the procedural posture in this appeal and that in *J.H.* are distinct as, in *J.H.*, the appeal arose from a motion to compel filed before the trial court and, here, the genesis of the appeal was a petition for review in the nature of mandamus, filed in the original jurisdiction of the Commonwealth Court. While this matter does arise in mandamus, the State Police is in fact challenging the legality of the underlying expungement order in its preliminary objections. As noted above, we rejected a similar contention in *J.H.*, making clear standing is not conferred by a party's relationship to the proceedings. Thus, the State Police's argument regarding the dissimilar procedural posture is a distinction without a difference.

Related thereto, the State Police contends that it should not be forced to comply with an order it believes is illegal, and, through mandamus, that it may challenge the legality of the expungement order. According to the State Police, *Fajohn* stands for the proposition "that governmental entities may refuse to follow court orders when such orders are illegal, regardless of the mechanism by which the issue is raised, especially when the respondent-agency is not the petitioning party." State Police Reply Brief at 1.

In *Fajohn*, Dominic Fajohn brought an action in mandamus to compel the Department of Corrections to apply credit for a certain period of time in the imposition of his sentence. The Department of Corrections refused to apply credit on the grounds that it violated Pa.R.Crim.P. 1406(c) (concerning imprisonment for other offenses). The Commonwealth Court sustained the Commonwealth's preliminary objections and Fajohn appealed. Our Court found mandamus was not available to compel the relief Fajohn sought, but, rather, held the proper avenue for relief was in an application for resentencing with the trial court.

The State Police's reliance upon *Fajohn* is misplaced. First, unlike in this appeal, the issue of a governmental

entity's standing to refuse to comply with a trial court's order was not at issue in *Fajohn*. In fact, standing is not mentioned in the opinion. Second, the *Fajohn* Court was not addressing a matter that arose under CHRIA, but rather, a sentencing matter. Third, and related thereto, our Court unmistakably held in *J.H.*, decided three years *after Fajohn* that "standing is not conferred via a party's relationship to the proceedings." *J.H.*, 563 Pa. at 253, 759 A.2d at 1271. Thus, if the State Police has no standing to challenge an application for expungement before the trial court, 18 Pa.C.S.A. § 9122, and it has no standing to challenge such an order in the context of a motion to compel before our common pleas courts, *J.H.*, then it follows that it does not have standing to challenge the legality of the expungement order in the context of preliminary objections filed in a petition for review for mandamus. In a mandamus proceeding, the State Police is a respondent only in its role as the central repository, and may not challenge the underlying legality of the expungement order. Indeed, to give the State Police standing to raise preliminary objections in a mandamus action in order to challenge the legality of an expungement order would be to permit it to do collaterally what it could not do directly. As we have made plain, the State Police is not aggrieved "either by the order to expunge [Hunt's] criminal record, or by the order compelling it to expunge the same records." *J.H.*, 563 Pa. at 253, 759 A.2d at 1271–72. Thus, our earlier decision in *Fajohn* does not compel a different result in this appeal.[14]

Finally, the State Police's policy arguments—that not only could Hunt commit other offenses against minors, and, since there would be no record of his previous crimes, seek ARD, to which, according to the State Police, he would not be entitled; that the State Police's investigatory efforts could be hampered; and that Hunt's expungement involves serious sexual

14. Similarly, the State Police's arguments that, based upon its role as the central repository, it is aggrieved because it would be prevented from retaining the record of a sexual offender whose victims were minors and that, potentially, Hunt could commit other crimes and impermissibly seek ARD were rejected by this same conclusion in *J.H.* that the State Police performed ministerial duties and was not aggrieved by an order compelling it to expunge records. *Id.*

offenses—are more appropriately made to the General Assembly. Indeed, the General Assembly, well aware of the impact of expungement and the relative severity of crimes in our Commonwealth, could have easily accorded standing to different entities with respect to different crimes. Yet, they have not chosen to do so. Thus, we reject the State Police's assertion of standing on these bases. We do not decide today that the State Police *should* not have standing. We decide that the legislature has not granted it standing.

 Our conclusion that the State Police lacks standing in matters of expungement is supported by the presumption that our construction of a statute reflects the intent of the legislature when the General Assembly revisits a statutory provision, but does not amend the statute in a manner contrary to our Court's view. 1 Pa.C.S.A. § 1922(4).[15] In the near decade after our decision in *J.H.*, the General Assembly has not seen fit to alter our determination regarding State Police standing. As persuasively recognized by Chief Justice Castille, the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute. *Commonwealth v. Dickson*, 591 Pa. 364, 392–93, 918 A.2d 95, 112–13 (2007) (Castille, J. dissenting) ("I do not believe it strained or ephemeral to conclude that the Legislature's failure to alter the statute, under these circumstances, signifies its satisfaction with the prevailing construction"). This principle is especially forceful given Section 9122(b.1) was amended not once, but twice, after we rendered our decision in *J.H.* Neither the 2004 nor the 2005 amendments to CHRIA remotely suggest the General Assembly intended that the State Police should be permitted standing with respect to a trial court's expungement order. Therefore, a strong presumption arises that our Court's prior holding in *J.H.* that the State Police lacks standing to challenge an expungement order is the view of the Pennsylvania legislature as well.

15. The rules of statutory construction counsel when "a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S.A. § 1922(4).

■ Related thereto, our holding today is undergirded by the foundational doctrine of *stare decisis*. When our Court renders a decision on a particular topic, it enjoys the status of precedent. The danger of casually discarding prior decisions is that future courts may regard the new precedent as temporary as well. Justice Saylor cogently noted the importance of the adherence to the doctrine of *stare decisis* and its "special force" in matters of statutory construction:

> Certainly, there are legitimate and necessary exceptions to the principle of stare decisis. **But for purposes of stability and predictability that are essential to the rule of law, the forceful inclination of courts should favor adherence to the general rule of abiding by that which has been settled. Moreover, stare decisis has "special force" in matters of statutory, as opposed to constitutional, construction, because in the statutory arena the legislative body is free to correct any errant interpretation of its intentions,** whereas, on matters of constitutional dimension, the tripartite design of government calls for the courts to have the final word.

*Shambach v. Bickhart*, 577 Pa. 384, 405–06, 845 A.2d 793, 807 (2004) (Saylor, J. concurring) (citations omitted). Therefore, the statutory language contained in CHRIA, presumptions found in the Statutory Construction Act, and the bedrock jurisprudential doctrine of *stare decisis* all counsel toward our reaffirming the continued vitality of our decision in *J.H.*, and holding that the State Police lacks standing to challenge the underlying merits of an expungement order through preliminary objections raised in a mandamus action.

■ As we find the State Police does not have standing to challenge the legality of Hunt's expungement order through preliminary objections, we do not reach the State Police's second issue concerning the merits of expungement of criminal records of indecent assault where the victim was under 18 years of age. Therefore, we turn to Hunt's cross-appeal concerning the award of damages and the State Police's

challenge to the award of damages or counsel fees in its appeal.[16]

In his cross-appeal, Hunt raises the issue of whether the Commonwealth erred in failing to award him actual and punitive damages pursuant to CHRIA. Because the Commonwealth Court found the law as set forth in *J.H.* was clear, and the State Police "obdurately refused to comply with the trial court's order," it awarded Hunt $6,069 in counsel fees. Commonwealth Court Op. at 5. The court denied Hunt's request for punitive damages, finding such damages cannot be awarded against the Commonwealth.

Hunt contends that, while the Commonwealth Court properly ordered compliance with the underlying expungement order and awarded counsel fees and litigation costs, it erred in failing to award him actual and real damages of not less than $100.00, as well as punitive damages of not less than $1,000.00 or more than $10,000, as provided in Section 9183(b)(2) of CHRIA. According to Hunt, the clear language of CHRIA, which mandates the imposition of counsel fees, actual damages, and punitive damages if conduct is willful, coupled with the State Police's willful disobedience of the trial court's order, leads to the conclusion he is entitled to actual and punitive damages.

The State Police submits that, in order to collect actual damages under CHRIA, one must prove a violation of the statute. According to the State Police, the trial court's expungement order was illegal. Therefore, Hunt is not entitled to actual damages. Moreover, even if the trial court had the authority to issue its expungement order, the State Police asserts Hunt did not establish that he has been aggrieved by the State Police's refusal to expunge his records, as there is no evidence Hunt has been damaged by the continued maintenance of his criminal record. Therefore, the State Police

16. The State Police's contention it has standing because it is aggrieved by the Commonwealth Court's order imposing counsel fees is valid— but only to contest the award of counsel fees against it, and not to relitigate the underlying merits of the trial court's expungement order.

contends we should not impose actual damages, punitive damages, or counsel fees in this matter.

Section 9183(b)(2) of CHRIA offers the possibility of both actual and real, as well as exemplary and punitive, damages:

A person found by the court to have been aggrieved by a violation of this chapter or the rules or regulations promulgated under this chapter, **shall be entitled to actual and real damages of not less than $100 for each violation and to reasonable costs of litigation and attorney's fees. Exemplary and punitive damages of not less than $1,000 nor more than $10,000 shall be imposed for any violation of this chapter, or the rules or regulations adopted under this chapter, found to be willful.**

18 Pa.C.S.A. § 9183(b)(2).

The Commonwealth Court recognized Hunt sought reasonable costs of litigation and counsel fees as well as an award of punitive damages. The court, however, only addressed the claim for counsel fees, and denied Hunt's request for punitive damages.

As is plain from a reading of the statute, by its terms, CHRIA provides for the possibility of actual and real damages, and reasonable costs of litigation and counsel fees, where a person was found to have been aggrieved by a violation of CHRIA. The statute also contains a provision for the award of exemplary and punitive damages when the violation is found to be willful. CHRIA does not define the term "aggrieved," nor does it set forth whether the Commonwealth may be liable for punitive damages under the statute.

The Commonwealth Court did not consider the issue of whether Hunt was entitled to "actual and real damages" and did not explain whether Hunt was aggrieved. Moreover, while our case law suggests the Commonwealth may be exempt from the imposition of punitive damages, *see City of Philadelphia Office of Housing and Cmty. Dev. v. AFSCME,* 583 Pa. 121, 876 A.2d 375 (2005) (citing *Feingold, supra* ), the Commonwealth Court did not develop its reasoning concerning the denial of punitive damages, even in light of the terms of

the statute which provides for such a remedy, in rendering its order below. Therefore, we remand for a determination of whether Hunt was aggrieved by the State Police's refusal to expunge Hunt's criminal record; whether exemplary and punitive damages are available against the State Police as a government agency; and, if so, whether the State Police's conduct was willful and Hunt is entitled to exemplary and punitive damages under CHRIA.

For the reasons stated above, we affirm in part the order of the Commonwealth Court and remand the matter for further proceedings consistent with this opinion. Jurisdiction relinquished.

Chief Justice CASTILLE, and Justice SAYLOR, BAER and McCAFFERY and Justice GREENSPAN join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

I respectfully dissent, as the Commonwealth Court erred in holding the State Police lacked standing to contest Hunt's criminal record expungement. "The core concept of standing is that 'a party who is not negatively affected by the matter [it] seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of its challenge' ". *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006) (citation omitted). A party is aggrieved if it can demonstrate it has "a substantial, direct, and immediate interest in the outcome of the litigation". *Id.,* at 1261–62. This Court has held:

A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it.

*In re Hickson*, 573 Pa. 127, 821 A.2d 1238, 1243 (2003) (citations omitted).

The Commonwealth Court relied on *Commonwealth v. J.H.*, 563 Pa. 248, 759 A.2d 1269 (2000), which held the State Police lacked sufficient interest in the case subject matter to possess standing to challenge an expungement order. *Id.*, at 1271–72. The State Police's involvement in *J.H.* stemmed from its response to the trial court's rule directing it to show cause why the arrestee's conviction records should not be expunged. *Id.*, at 1270.

Here, in contrast to *J.H.*, the State Police asserted standing from the procedural posture of mandamus and summary relief under the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. § 9101 *et seq.* "A proceeding in mandamus is an extraordinary action at common law, designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy". *Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287, 289 (2001) (citations omitted). This different procedural posture is not, as the majority states, "a distinction without a difference." Majority Op., at 171, 983 A.2d at 636. The State Police was not a party to the expungement request in *J.H.*, whereas it is a named party to this action, which sought to compel it to take action.

As the State Police is a party to mandamus and summary relief actions, there is a clear causal connection between the action complained of (its refusal to comply with the expungement order) and the injury to the person challenging it (Hunt's inability to expunge his criminal record). Surely the State Police, as keeper of the criminal records, has a substantial interest and is thus aggrieved by the order, particularly as it has been ordered to pay attorney's fees. It appears anomalous to suggest it cannot be heard on a matter which directs it to perform an act it perceives as contrary to its statutory duties.

Further, the State Police's position is not frivolous, because the expungement of Hunt's record for indecent assault of a minor is expressly prohibited by 18 Pa.C.S. § 9122(b.1). If it lacks standing to challenge the expungement order, yet mandamus compels it to comply with the order and pay Hunt's attorneys' fees for its noncompliance, we are left with a result contrary to legislative intent.

This Court has recently held a county clerk of court lacked standing to challenge a court order directing the clerk to seal records of those completing ARD, as that office is a "ministerial" one, without discretion to interpret rules and statutes. *In re Administrative Order No. 1–MD–2003*, 594 Pa. 346, 936 A.2d 1, 9 (2007). The clerk accordingly lacked authority—and thus, standing—to challenge the order in question. As the concurring opinion of Justice Saylor points out, there is a "tenuous relationship between [the clerk's] legal obligations and the statute at issue (CHRIA)." *Id.*, at 11 (Saylor, J., concurring). Here, however, the relationship is not at all tenuous, but rather is called for by the CHRIA itself. The CHRIA requires the State Police to maintain records of pretrial diversionary program participants.[1]

This Court has previously found the Gaming Control Board was aggrieved and had standing to challenge proposed ordinance amendments since the amendments would have thwarted the Board's statutory authority under the Gaming Act, 4 Pa.C.S. § 1101 *et seq. See Pennsylvania Gaming Control*

1. 18 Pa.C.S. § 9122(c) provides:
 (c) *Maintenance of certain information required or authorized.*—Notwithstanding any other provision of this chapter, the prosecuting attorney and the central repository shall, and the court may, maintain a list of the names and other criminal history record information of persons whose records are required by law or court rule to be expunged where the individual has successfully completed the conditions of any pretrial or post-trial diversion or probation program. Such information shall be used solely for the purpose of determining subsequent eligibility for such programs and for identifying persons in criminal investigations. Criminal history record information may be expunged as provided in subsection (b)(1) and (2). Such information shall be made available to any court or law enforcement agency upon request.
 *Id.*

*Board v. City Council of Philadelphia,* 593 Pa. 241, 928 A.2d 1255 (2007). The State Police has even more than statutory authority; it has a statutory obligation as the central repository to maintain criminal record information, including expunged records, as well as those prohibited from expungement. 18 Pa.C.S. § 9122(b.1), (c). There is a clear and causal connection between the Commonwealth Court's ruling and the State Police's ability to fulfill its role as the central repository, and more importantly, the Commonwealth's highest police agency. The State Police, and the public in general, may be harmed if unable to fully and properly investigate the record of Hunt's prior crimes of indecent assault of a minor.

For the foregoing reasons, I dissent. I would vacate and remand for consideration of the remaining issues in the appeal and cross-appeal.