**[J-59-2017][M.O. – Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| VICTORIA BALENTINE, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF EDWIN OMAR MEDINA-FLORES, DECEASED, | : : : : : : | No. 119 MAP 2016<br><br>Appeal from the Order of the Commonwealth Court dated 6/3/16 at No. 1859 CD 2015 affirming the Order of the Delaware County Court of |
| Appellant | : : : : | Common Pleas, Civil Division, dated 9/2/15 at No. 13-11179 |
| v. | : : : | |
| CHESTER WATER AUTHORITY, WYATT A. ROLAND, MICHAEL W. ROLAND AND CHARLES MATTHEWS, | : : : : : | |
| Appellees | : | ARGUED:   September 13, 2017 |

**DISSENTING OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: August 21, 2018**

The majority opinion appears to accept that the uncontrolled movement of a driverless vehicle stricken from behind is not "operation of a motor vehicle" under the governing precedent in *Love v City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988). Nevertheless, favoring the rationale of the *Love* dissent and its close cousin in *Warrick v. Pro Cor Ambulance, Inc.*, 559 Pa. 44, 45-49 739 A.2d 127, 127-29 (1999) (Newman, J., dissenting), the majority proceeds to overrule *Love* on the basis that "for the General Assembly to have intended the abrogation of governmental immunity based on the random factor of motion is an absurd or unreasonable result." Majority Opinion, *slip op.* at 16.

In *Love*, this Court implemented its duty to narrowly construe exceptions to sovereign immunity by adopting a construction of the word "operation" connoting actual operation, *i.e.*, movement of the vehicle under the direction of an operator. *See id.* at 374-75, 543 A.2d at 532-33.[1] Significantly, the General Assembly amended the motor vehicle exception in 1995 but did not provide further guidance concerning the definition of operation; accordingly, the Legislature signaled its approval of the *Love* Court's construction. *See* 1 Pa.C.S. §1922(4); *Hunt v. PSP*, 603 Pa. 156, 173, 983 A.2d 627, 637 (2009) (reiterating that, when the General Assembly revisits a statutory provision, but does not amend it contrary to this Court's prior interpretation, it signifies its satisfaction with the prevailing construction).

Furthermore, other jurisdictions applying the rule of strict construction have held that "operation" encompasses activities that are directly associated with driving a motor vehicle. *See, e.g.*, *Chandler v. County of Muskegon*, 652 N.W.2d 224, 228 (Mich. 2002) ("[T]he common usage of the term 'operation' refers to the ordinary use of the vehicle *as* a motor vehicle, namely, driving the vehicle." (emphasis in original)); *Texas Juv. Justice Dep't v. PHI, Inc.*, 537 S.W.3d 707, 716 (Tex. Ct. App. 2017) (applying the concept of "*active* operation" in connection with strict construction of an immunity statute (emphasis in original)). I do not regard their jurisprudence as being absurd and unreasonable.

---

[1] In this regard, and abiding by the requirement of narrow construction, I agree with the line of Commonwealth Court decisions holding that causality is also assessed in terms of present operation. *See, e.g.*, *PSP v. Robinson*, 123 Pa. Cmwlth. 401, 403-404, 554 A.2d 172, 174 (1989) (observing that, even if the placement of the vehicle may have a causal relationship to the injury, the motor vehicle exception does not apply unless the vehicle is actually in motion at the time of the injury); *City of Phila. v. Melendez*, 156 Pa. Cmwlth. 271, 275, 627 A.2d 234, 236 (1993) (determining that, because the vehicle was not being parked at the time of the collision, but rather, was already parked, it was no longer in operation); *accord Mickle v. City of Philadelphia*, 550 Pa. 539, 543, 707 A.2d 1124, 1126 (1998) (observing that "operation *at the time of the accident* [is] required by *Love*" (emphasis added)).

Rather, I find that it derives rationally and directly from an accustomed understanding of the notion of "operation" and application of the requirement of narrow construction.

Nor do I deem the ostensible tension between *Mickle* and *Love*, *see* Majority Opinion, *slip op.* at 10-11, to be material. There will always be accretions and observable inconsistencies in this Court's decisions, as they are often a product of shifting majorities formed amongst fundamentally different approaches expressed with deep conviction. The primary stabilizing influence is the doctrine of *stare decisis*, which is the principle upon which I rely here. In this regard, I simply do not agree that binding precedent should be overturned based on the majority's bare assertion that the *Love* Court's definition "has impeded the development of consistent and logical case law," Majority Opinion, *slip op.* at 12. *See generally Hunt*, 603 Pa. at 174, 983 A.2d at 637–38 ("[F]or purposes of stability and predictability that are essential to the rule of law, the forceful inclination of courts should favor adherence to the general rule of abiding by that which has been settled. Moreover, stare decisis has 'special force' in matters of statutory, as opposed to constitutional, construction, because in the statutory arena the legislative body is free to correct any errant interpretation of its intentions[.]" (citation omitted)).

To me, it is not so much *Love*, *per se*, that seems to be in issue, but rather, the underlying precept that exceptions to sovereign and governmental immunity are to be narrowly construed. *See Mascaro v. Youth Study Center*, 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987); *Snyder v. Harmon*, 522 Pa. 424, 433-34, 562 A.2d 307, 312 (1989). Given the tremendous hostility of the Court to sovereign immunity manifested in its decisions in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), and *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), one might have thought that the Court would have cemented a contrary

rule, at least in the absence of explicit legislative direction. But, again, we are where we are, and, from my point of view, the issue of whether the longstanding precedent should now be displaced should be left to the Legislature, consistent with *stare decisis* and governing principles of statutory construction.

Finally, I respectfully disagree that the *Love* Court's definition of operation is "untethered to the narrow question addressed" therein and, therefore, constitutes dicta. Concurring Opinion at 2 (Baer, J.). The central issue in *Love* -- whether entering into or alighting from a motor vehicle constitutes operation -- could not have been resolved without first defining the term "operation." *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 116 S. Ct. 1114, 1129 (1996) ("We adhere . . . not to mere *obiter dicta*, but rather to the well-established rationale upon which the Court based the results of its earlier decisions. When an opinion issues . . . it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *accord Engweiler v. Persson*, 316 P.3d 264, 270 (Or. 2013) (declining to treat a court's prior construction of a term as dicta because it was a predicate to the ultimate resolution of that case); *Bellar v. National Motor Fleets, Inc.*, 450 S.W.2d 312, 314 (Tenn. 1970) ("On principle and reason . . . a case construing the particular words of a statute could hardly ever be dictum in a later case involving the same statut[ory] language."). I fail to see how trial courts and intermediate courts are to differentiate between controlling precedent and dicta if the definition of a term that is essential to the resolution of a case is treated as dictum.

For the above reasons, I respectfully dissent.