# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Haron,             :
         Petitioner          :
                                   :    No. 220 M.D. 2015
        v.                    :
                                   :    Submitted: January 27, 2017
Pennsylvania State Police,     :
         Respondent      :    CASE SEALED

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE McCULLOUGH                 FILED: September 19, 2017

Presently before this Court is the application of Michael Haron (Haron) for summary relief in relation to a petition for review he filed against the Pennsylvania State Police (PSP) alleging that the PSP willfully failed to completely and accurately maintain his criminal history record information in violation of section 9111 of the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §9111.

## Facts and Procedural History

### A. Haron's 1991 Conviction

The following facts are garnered from the pleadings in this matter and are largely undisputed. On May 21, 1991, Haron was stopped in his vehicle by the Allentown Police Department. At the time he was pulled over, Haron had a BB gun

in his possession as well as a small amount of marijuana.  Haron was arrested and charged with possession of marijuana in violation of section 13(a)(31) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-113(a)(31), and carrying a loaded weapon other than a firearm in violation of section 6106.1(a) of the Pennsylvania Uniform Firearms Act of 1995 (UFA), 18 Pa.C.S. §6106.1(a).[1,2]  Haron later pleaded guilty to a violation of section 6106.1(a) of the UFA and the marijuana possession charge was dismissed.  Section 6106.1(b) of the UFA, 18 Pa.C.S. §6106.1(b), describes a violation of this section as a summary offense.

Though the exact date is in dispute, i.e., either late February or early March 2014, Haron attempted to purchase a firearm.[3]  However, Haron's attempt was denied after PSP's Pennsylvania Instant Check System (PICS) returned a criminal history result for Haron that indicated he was prohibited from purchasing a firearm because of a 1991 conviction for violating section 6106 of the UFA, 18 Pa.C.S. §6106 (carrying a firearm without a license).  Section 6106 describes this offense as a felony of the third degree for anyone who does not have a license, but reduces the offense to a misdemeanor of the first degree if the person is otherwise eligible to possess a valid license.  *See* 18 Pa.C.S. §6106(a)(1), (2).

**B. Haron's PICS Challenge**

---

[1] Section 6106.1 was added by the Act of December 7, 1989, P.L. 607.

[2] These offenses were docketed locally as OTN #C2474135.

[3] Haron alleges his attempted purchase was in late February 2014.  PSP asserts that Haron failed a background check on March 5, 2014.

Haron subsequently filed a PICS challenge on a form designated by PSP, the date of which is unclear in the pleadings. By letter dated March 12, 2014, PSP confirmed the denial of Haron's purchase of a firearm on the basis that his "1991 conviction for Firearm Carried without a License [was] prohibiting."[4] *See* Exhibit B to Haron's Complaint. PSP attached to this letter a printout reflecting a date of arrest of May 21, 1991, a local docket number of C2474135, and charges reflecting "FIREARM CARRIED WITHOUT A LICENSE" and "VIOLATION OF CONTROLLED SUBSTANCE, DRUG, DEVICE, AND COSMETIC ACT." *Id.* Indeed, PSP's Central Repository reflected that Haron pleaded guilty to a violation of section 6106, graded as a misdemeanor of the first degree. *See* Exhibit C to Haron's Complaint. In its March 12, 2014 letter, PSP advised Haron that he had thirty days to submit documentation challenging the denial.

By letter dated March 18, 2014, Haron advised PSP that its information was incorrect because in 1991 he was charged with, and pleaded guilty to, possession of a weapon other than a firearm, which he incorrectly described as a misdemeanor of the first degree,[5] and was not charged with carrying a firearm without a license. Haron attached to this letter a copy of his original citation, which was partly illegible, as well as a notice of hearing which identified his charges as "POSSESSION OF SMALL AMOUNT  CRY LOAD WEAP OTH THA FRARM." *See* Exhibit A of PSP's Answer to Haron's Petition for Summary Relief.

By letter dated April 3, 2014, PSP responded that it was in receipt of the additional documentation that Haron submitted, that said documentation had been

---

[4] PSP states in this letter that Haron's PICS challenge was received the same day, i.e., March 12, 2014.

[5] As noted above, section 6106.1(b) of the UFA describes possession of a weapon other than a firearm as merely a summary offense.

3

reviewed, and that its decision denying his challenge was upheld. PSP again referenced Haron's purported 1991 conviction for carrying a firearm without a license as being prohibitive. This letter further advised Haron that he could file an appeal within thirty days with the Office of Attorney General, Regulatory Compliance & Intelligence Section (hereafter OAG). Haron thereafter obtained counsel, who required a retainer fee of $1,500.00, and subsequently filed an appeal with OAG on April 21, 2014. Haron alleged that the same documentation he previously provided to PSP in the course of his PICS challenge was attached to his OAG appeal; however, none of the documentation relating to Haron's OAG appeal is included in the record before this Court.

On April 28, 2014, Haron's counsel received a voicemail message from PSP acknowledging that its records were incorrect, the same had been corrected, Haron was not prohibited from purchasing a firearm, and that no further documentation would be forthcoming. Nevertheless, PSP alleges that it sent Haron a letter dated May 27, 2014, acknowledging the same, but Haron and his counsel deny ever receiving the same. The appeal before OAG proceeded with the appointment of an administrative law judge (ALJ) to hear the matter. At an October 22, 2014 hearing before the ALJ, PSP stipulated that its records incorrectly reflected that Haron had been convicted under section 6106, rather than 6106.1, of the UFA, and that he was not prohibited from purchasing a firearm. Hence, by order dated December 4, 2014, the ALJ granted Haron's appeal.

**C. Haron's Complaint**

In the meantime, on July 24, 2014, as his appeal was pending before the OAG, Haron filed a complaint with the Court of Common Pleas of Cumberland County (trial court). In this complaint, Haron alleged that PSP violated section 9111

4

of CHRIA by inaccurately recording and maintaining his past criminal history record information as including a 1991 conviction for violating section 6106, instead of 6106.1 of the UFA. Haron also alleged that PSP added a grading to this conviction of a misdemeanor of the first degree. Because section 6106.1 is a summary offense and not graded, and section 6106 includes two possible gradings, Haron argued that PSP's entry of a specific grading was "highly suggestive of the willful and intentional nature of the inaccurate recordkeeping." (Haron's Complaint at ¶33.)

Haron also argued that PSP ignored the documentation he provided in an attempt to correct the information maintained by PSP and only acknowledged the same after he had obtained counsel and initiated further legal action by filing an appeal with OAG. However, even after acknowledging the same, Haron noted that PSP refused to issue any statement in writing regarding the inaccuracy of its records or the correction of the same. Haron sought a judgment from the trial court declaring that PSP was in violation of CHRIA and that said violation was willful; enjoining PSP from denying his purchase of a firearm based on his 1991 conviction; requiring PSP to issue written confirmation and evidentiary proof of the correction of his record; awarding him compensatory, statutory, and punitive damages; and awarding him reasonable attorney fees and costs.

On October 2, 2014, counsel for PSP filed preliminary objections alleging that the trial court lacked jurisdiction, that Haron failed to exhaust his administrative remedies, and that the matter was moot as it sent Haron a letter dated May 27, 2014, notifying him that he was no longer prohibited from purchasing a firearm. Haron filed a motion to strike PSP's preliminary objections, but the motion was denied by the trial court. By order dated December 1, 2014, the trial court sustained PSP's preliminary objections to mootness with respect to Haron's claims for declaratory and injunctive relief, but overruled PSP's preliminary objections with

5

respect to any claims for monetary damages, attorney fees, and costs. The trial court further sustained PSP's preliminary objection relating to jurisdiction, and transferred jurisdiction over the remaining monetary damages claims to this Court.

## D. Transfer of Complaint to this Court

Upon transfer here, we directed PSP to file an answer to Haron's complaint (subsequently designated as a petition for review). PSP filed an answer denying the material allegations of Haron's petition for review, noting that it relies on information received from arresting agencies and dispositions from the Administrative Office of Pennsylvania Courts in maintaining a defendant's criminal history record information. PSP also noted that it requested further information on Haron's firearms conviction from the local common pleas court but that court stated it had no information regarding the same. PSP did admit in its answer that it mistakenly sent the April 3, 2014 denial letter to Haron, but stated that it corrected his record as of April 28, 2014, and sent a letter dated May 27, 2014, advising of this correction. Further, PSP denied that Haron was deprived of a fundamental right or that its actions were willful or intentional.

In new matter, PSP averred that the matter was moot because the relief Haron requested has been provided. PSP noted that it had sixty days under section 9152(d) of CHRIA, 18 Pa.C.S. §9152(d), to review a challenge to the accuracy of a criminal record, that Haron provided corrective information dated March 18, 2014 (which was not received until March 20, 2014), and that it orally notified Haron's counsel of a correction on April 28, 2014, followed by written correspondence dated May 27, 2014. PSP indicated that the oral notice to Haron's counsel was provided within this sixty-day window, but the written correspondence was not provided within this timeframe. Finally, PSP averred that Haron had not shown that any

6

injury occurred to him between March 18, 2014, and April 28, 2014, and, therefore, he was not entitled to damages under section 9183 of CHRIA, 18 Pa.C.S. §9183.

In an answer to this new matter, Haron responded that the matter was not moot, noting the trial court's previous ruling on this issue. Haron also noted that his requests for monetary damages, reasonable attorney fees, and costs remain outstanding. Haron stated that, despite PSP's April 28, 2014 voicemail, PSP refused to provide written confirmation of the correction of his records. Haron specifically denied receipt of PSP's May 27, 2014 letter. Finally, Haron responded that he suffered damages for the time period from March 18, 2014, through October 22, 2014, the date of the ALJ's hearing.

### E. Haron's Petition for Summary Relief

On May 13, 2016, Haron filed the present petition for summary relief pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1532(b). In this petition, Haron notes that PSP admits to violating sections 9111 (requiring a criminal justice agency to maintain complete and accurate criminal history record information) and 9114 (requiring a criminal justice agency to correct its record within fifteen days of the detection of inaccurate data in a criminal history record, regardless of the manner of discovery) of CHRIA, 18 Pa.C.S. §§9111, 9114. Haron reiterates his allegation that PSP's violations were willful and deliberate. Haron alleges that its right to relief is clear, that there are no material issues of fact in dispute, and that the only issue that remains to be determined is the amount of damages to which he is entitled under section 9183 of CHRIA. Haron requests actual damages in the amount of $1,500.00, attorney fees and costs in the amount of $9,860.51, and punitive damages in the amount of $10,000.00. At the same time, Haron submitted an affidavit as to the facts detailed above. Haron also submitted

affidavits from two attorneys who provided him with legal representation, as well as statement of costs and attorney fees detailing the $9,860.51 noted above.

PSP filed an answer to this petition denying that Haron's right to relief is clear. PSP averred that Haron was not aggrieved or entitled to damages as a result of its maintenance of an incorrect criminal history record because, after his attempted purchase of a firearm was denied, Haron initiated a statutorily mandated administrative appeal process pursuant to section 6111.1(e) of the UFA, 18 Pa.C.S. §6111.1(e).[6] PSP noted that it ultimately reversed its decision less than two months later and prior to the need for a PICS administrative hearing. PSP also averred that Haron submitted no direct evidence that it acted in a willful manner justifying the imposition of punitive damages. To the contrary, PSP noted that the evidence of record indicates, at best, that it maintained an incorrect criminal history record, that the incorrect record caused Haron to initially be denied a purchase of a firearm, and that, after review of documentation submitted by Haron, it corrected its record and cleared Haron for a firearms purchase within the sixty days required by section 6111.1(e).

In new matter, PSP averred that Haron's claims to entitlement of summary relief and damages for alleged violations of CHRIA are barred by sovereign immunity. PSP noted that Haron initially sought administrative relief under the UFA and did not pursue relief under sections 9151 and 9152 of CHRIA, 18 Pa.C.S. §§9151, 9152. Thus, PSP averred that CHRIA is inapplicable to this matter and Haron's claims for damages and attorney fees should be dismissed. PSP also

---

[6] Section 6111.1 of the UFA was added by the Act of November 22, 1995, P.L. 621. Section 6111.1(e)(2) provides that PSP shall communicate its final decision to a person challenging the accuracy of his/her criminal history within 60 days of the receipt of said challenge. 18 Pa.C.S. §6111.1(e)(2).

reiterated that Haron failed to adduce any evidence that it willfully violated CHRIA such that an award of punitive damages was justified.

## Discussion

Pa.R.A.P. 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." *See also Calloway v. Pennsylvania Board of Probation & Parole*, 857 A.2d 218, 220 n.3 (Pa. Cmwlth. 2004) ("An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute.").

## UFA

PSP is correct that Haron originally brought his challenge under section 6111.1(e) of the UFA, which provides as follows:

> (1) Any person who is denied the right to receive, sell, transfer, possess, carry, manufacture or purchase a firearm as a result of the procedures established by this section may challenge the accuracy of that person's criminal history, juvenile delinquency history or mental health record pursuant to a denial by the instantaneous records check by submitting a challenge to the Pennsylvania State Police within 30 days from the date of the denial.

> (2) The Pennsylvania State Police shall conduct a review of the accuracy of the information forming the basis for the denial and shall have the burden of proving the accuracy of the record. Within 20 days after receiving a challenge, the Pennsylvania State Police shall notify the challenger of the basis for the denial, including, but not limited to, the jurisdiction and docket number of any relevant court decision and provide the challenger an opportunity to provide additional information for the purposes of the review. The Pennsylvania State Police shall communicate

its final decision to the challenger within 60 days of the receipt of the challenge. The decision of the Pennsylvania State Police shall include all information which formed a basis for the decision.

(3) If the challenge is ruled invalid, the person shall have the right to appeal the decision to the Attorney General within 30 days of the decision. The Attorney General shall conduct a hearing de novo in accordance with the Administrative Agency Law. The burden of proof shall be upon the Commonwealth.

(4) The decision of the Attorney General may be appealed to the Commonwealth Court by an aggrieved party.

18 Pa.C.S. §6111.1(e)(1)-(4).

In the present case, the record establishes that Haron was denied the purchase of a firearm in late February or early March 2014 and subsequently filed a PICS challenge with PSP. Following confirmation of the denial by PSP by letter dated March 12, 2014, which was well within 20 days of receipt of the challenge, Haron responded in a letter dated March 18, 2014, that PSP's information was incorrect. Haron attached to this letter a copy of his original citation, which was partly illegible, as well as a notice of hearing which identified his charges as "POSSESSION OF SMALL AMOUNT  CRY LOAD WEAP OTH THA FRARM." *See* Exhibit A of PSP's Answer to Haron's Petition for Summary Relief.

In the meantime, Haron filed a complaint/petition for review with the trial court alleging that PSP had violated certain provisions of CHRIA. In its answer to Haron's complaint/petition for review, PSP states that upon receipt of this documentation from Haron on March 20, 2014, it contacted the Court of Common Pleas of Lehigh County, which handled Haron's criminal charges, in order to verify the disposition of charges. However, PSP noted that the Court of Common Pleas of Lehigh County responded that it did not have any information relating to Haron's

1991 convictions. Hence, PSP could not verify the information contained in the documentation submitted by Haron and by letter dated April 3, 2014, which was well within the required 60-day timeline for response to his original challenge, PSP advised Haron that its decision denying his challenge was upheld. PSP further noted in its answer to Haron's complaint/petition for review that Haron's record was corrected shortly thereafter on April 28, 2014. Indeed, on this date, PSP left a voicemail for Haron's counsel acknowledging that its records were incorrect; that the records had been corrected; and that Haron was not prohibited from purchasing a firearm.

While we agree with Haron that the decision required under 6111.1(e)(2) of the UFA must be in writing, at this point, PSP had issued a timely written decision with respect to Haron's PICS/UFA challenge, which Haron appealed to the OAG. Haron's second letter in his challenge to the PSP denial was dated March 18, 2014, and contained additional information which had not been previously attached and which PSP could not retrieve from the Court of Common Pleas of Lehigh County. PSP then issued its April 3, 2014 denial letter, from which Haron filed an appeal with OAG on April 21, 2014. While PSP acknowledged to Haron via voicemail on April 28, 2014, that its records were incorrect and that the same had been corrected, it was not incumbent upon PSP to issue yet another written decision at this point since Haron had already commenced an appeal with the OAG. Nevertheless, PSP alleges that it did subsequently send Haron a letter dated May 27, 2014, confirming the information above. PSP attached a copy of this letter to its answer to Haron's complaint/petition for review.

Based upon these facts, we cannot conclude that PSP willfully failed to comply with section 6111.1(e) of the UFA. To the contrary, PSP complied with the requirements of section 6111.1(e), by notifying Haron within 20 days of his PICS

11

challenge as to the basis for the denial and by communicating its final decision to Haron within 60 days of its receipt of said challenge. PSP timely responded to Haron's challenge on March 12, 2014, and April 3, 2014, under 6111.1(e)(2), and Haron appealed therefrom to the OAG. There is no requirement in the UFA to issue another decision once the matter is on appeal to the OAG. Further, PSP alleges that it received Haron's initial PICS challenge on March 12, 2014, and while Haron's March 18, 2014 letter contained additional documentation, including the original citation, PSP was unable to verify the information contained therein with the Court of Common Pleas of Lehigh County. In any event, the fact remains that Haron was advised of PSP's final decision correcting the records well before the July 24, 2014 filing of his complaint with the trial court and the ALJ's October 22, 2014 hearing, thereby obviating any harm that Haron allegedly suffered during that time period.

**CHRIA**

CHRIA is applicable "to any agency of the Commonwealth . . . which collects, maintains, disseminates or receives criminal history record information." *See* Section 9103 of CHRIA, 18 Pa.C.S. §9103. Section 9111 of CHRIA imposes a duty on such agencies "to maintain complete and accurate criminal history record information and to report such information at such times and in such manner as required by the provisions of this chapter or other applicable statutes." 18 Pa.C.S. §9111. Section 9114 of CHRIA addresses the correction of inaccurate information maintained by criminal justice agencies, providing as follows:

> Within 15 days of the detection of inaccurate data in a criminal history record, regardless of the manner of discovery, the criminal justice agency which reported the information shall comply with the following procedures to effect correction:

12

(1) Correct its own records.

(2) Notify all recipients, including the central repository, of the inaccurate data and the required correction.

18 Pa.C.S. §9114.

Section 9152 of CHRIA establishes the following procedure for a party wishing to challenge the accuracy of his/her criminal history record information, and provides in pertinent part, as follows:

(c) *Challenge of accuracy.* — The individual may challenge the accuracy of his or her criminal history record information by specifying which portion of the record is incorrect and what the correct version should be. Failure to challenge any portion of the record in existence at that time will place the burden of proving the inaccuracy of any part subsequently challenged upon the individual. Information subsequently added to such record shall also be subject to review, challenge, correction or appeal.

(d) *Review of challenge.* — All criminal justice agencies shall have 60 days to conduct a review of any challenge and shall have the burden of proving the accuracy of the record. The decision on the challenge shall include all information, including, but not limited to, the jurisdiction and docket number of any relevant court decision which formed a basis for the decision. If the challenge is deemed valid, the appropriate officials must ensure that:

(1) The criminal history record information is corrected.

(2) A certified and corrected copy of the criminal history record information is provided to the individual.

(3) Prior erroneous criminal history record information disseminated to criminal justice

agencies shall be destroyed or returned and replaced with corrected information.

(4) The individual is supplied with the names of those noncriminal justice agencies and individuals which have received erroneous criminal history record information.

(e) *Appeals.*

(1) If the challenge is ruled invalid, an individual has the right to appeal the decision to the Attorney General within 30 days of notification of the decision by the criminal justice agency.

(2) The Attorney General shall conduct a hearing de novo in accordance with the Administrative Agency Law. The burden of proof shall be upon the party bearing the burden of proof on the challenge.

(3) The decision of the Attorney General may be appealed to the Commonwealth Court by an aggrieved individual.

18 Pa.C.S. §9152(c)-(e).

Finally, section 9183 of CHRIA sets forth the available remedies for violations of its provisions, including the following:

(a) *Injunctions.* — The Attorney General or any other individual or agency may institute an action in a court of proper jurisdiction against any person, agency or organization to enjoin any criminal justice agency, noncriminal justice agency, organization or individual violating the provisions of this chapter or to compel such agency, organization or person to comply with the provisions of this chapter.

(b) *Action for damages.*

(1) Any person aggrieved by a violation of the provisions of this chapter or of the rules and regulations promulgated under this

14

chapter, shall have the substantive right to bring an action for damages by reason of such violation in a court of competent jurisdiction.

(2) A person found by the court to have been aggrieved by a violation of this chapter or the rules or regulations promulgated under this chapter, shall be entitled to actual and real damages of not less than $100 for each violation and to reasonable costs of litigation and attorney's fees. Exemplary and punitive damages of not less than $1,000 nor more than $10,000 shall be imposed for any violation of this chapter, or the rules or regulations adopted under this chapter, found to be willful.

18 Pa.C.S. §9183(a), (b).

Initially, we note that PSP correctly states that Haron originally sought administrative relief under the UFA and did not pursue relief under CHRIA. However, contrary to PSP's argument, we do not believe that Haron's initial choice to proceed under the UFA forecloses any potential relief under CHRIA. Indeed, the only relief available under the UFA appears to be correction of an individual's criminal history records, whereas CHRIA provides other potential relief in the nature of an injunction and/or damages.

In new matter included in its answer to Haron's petition for summary relief, PSP alleged for the first time that it was sovereignly immune from damages under CHRIA. PSP relies on this Court's previous decision in *Poliskiewicz v. East Stroudsburg University*, 536 A.2d 472 (Pa. Cmwlth. 1988), for support. In *Poliskiewicz*, the appellant was employed as a police officer for a local borough as well as a state university. Following an incident at a bar, the appellant was arrested for disorderly conduct and public drunkenness. The appellant was suspended from

15

both jobs pending the outcome of criminal proceedings. All criminal charges were subsequently dropped and the appellant returned to his position with the borough. The state university, however, did not reemploy him. The appellant filed a complaint against the state university seeking monetary damages and alleging that the refusal to reemploy him was violative of sections 9124 and 9125 of CHRIA (relating to the consideration by an employer, including a state agency, of an applicant's criminal history record information file with regard to hiring and determining eligibility for licensing, certification, registration, or permission to engage in a trade, profession, or occupation). The common pleas court sustained the state university's preliminary objection in the nature of a demurrer based upon sovereign immunity. This Court affirmed the common pleas court decision, noting that state universities are part of the Commonwealth for purposes of sovereign immunity, that the appellant's claim did not fall within one of the enumerated exceptions to such immunity, and that CHRIA does not contain a specific provision waiving immunity as to the Commonwealth.

However, as Haron notes in a reply brief, the record-keeping provisions of CHRIA apply almost exclusively to governmental units, with the exception of one provision that relates to the use of criminal records by employers. Additionally, while *Poliskiewicz* was not appealed to our Supreme Court, a more recent decision by that Court addressing PSP and section 9183 of CHRIA appears to implicitly overrule our prior decision. In *Hunt v. Pennsylvania State Police*, 983 A.2d 627, 639 (Pa. 2009), our Supreme Court stated as follows with respect to section 9183:

> As is plain from a reading of the statute, by its terms, CHRIA provides for the possibility of actual and real damages, and reasonable costs of litigation and counsel

16

fees, where a person was found to have been aggrieved by a violation of CHRIA. The statute also contains a provision for the award of exemplary and punitive damages when the violation is found to be willful. CHRIA does not define the term 'aggrieved,' nor does it set forth whether the Commonwealth may be liable for punitive damages under the statute.

The Commonwealth Court did not consider the issue of whether Hunt was entitled to "actual and real damages" and did not explain whether he was aggrieved. Moreover, while our case law suggests the Commonwealth may be exempt from the imposition of punitive damages . . . the Commonwealth Court did not develop its reasoning concerning the denial of punitive damages, even in light of the terms of the statute which provides for such a remedy, in rendering its order below. Therefore, we remand for a determination of whether Hunt was aggrieved by the State Police's refusal to expunge Hunt's criminal record; whether exemplary and punitive damages are available against the State Police as a government agency; and, if so, whether the State Police's conduct was willful and Hunt is entitled to exemplary and punitive damages under CHRIA.

In this case, PSP did originally maintain incorrect criminal history record information with respect to Haron in violation of section 9111 of CHRIA, which wrongfully resulted in the denial of his constitutional right to purchase a firearm for a period of several months and required him to ultimately obtain counsel. This Court never had the opportunity to rule on remand in *Hunt*, as the matter was discontinued. However, consistent with *Hunt*, we now apply the above analysis and find that the maintenance of incorrect criminal records resulting in an unwarranted denial of a constitutional right to purchase a firearm constitutes "aggrievement." Because Haron was aggrieved, he is entitled to recover actual and real damages, consistent with section 9183(b)(2) of CHRIA, in the amount of $1,500.00, which represents the retainer fee that Haron was required to pay to obtain counsel to

17

represent him in this matter. Additionally, Haron is entitled to reasonable costs of litigation and attorney fees. Counsel for Haron has submitted documentation evidencing minimal costs in the amount of $48.01, which we conclude is reasonable. Counsel for Haron further submitted documentation and affidavits from attorneys who worked on his case, including detailed invoices, reflecting a combined 33.9 hours of work at rates between $250.00 and $350.00 per hour, totaling $9,712.50.[7] We cannot conclude that such fees are reasonable for this particular case since the matter was essentially resolved by April 28, 2014, when Haron's counsel was advised that Haron's records had been corrected. At that point, Haron had only paid a retainer fee of $1,500.00. There was no legal work reflected on the attorney invoices until June 12, 2014, at which time counsel began drafting the complaint that was ultimately filed with the trial court. In other words, nearly two months after Haron's counsel was advised that the criminal history record information was corrected, legal work commenced on the matter in the trial court, i.e., filing of a complaint, preliminary objections and then a transfer to this Court. In light of such, we will award the retainer fee of $1,500.00, costs of $48.01, and a flat rate of $195.00 per hour for 25 hours of work, totaling $4,875.00, which we find represents a reasonable attorney fee herein.

Nevertheless, we do not believe that PSP's actions in this matter justify an award of punitive damages for alleged willful violations of CHRIA's provisions. There is no dispute that the records originally maintained by PSP were incorrect. Haron argues that PSP's failure to correct its records until at least late April 2014

_____

[7] The documentation submitted by Haron noted attorney fees totaling $9,812.50. However, this total included a miscalculation of the fees for services rendered by Joshua Prince, Esquire. The documentation represented that Attorney Prince performed 16.50 hours of work at $325.00 per hour, which allegedly resulted in a fee of $5,462.50. However, the correct fee should have been $5,362.50.

was willful, especially since he notified PSP of the error in its records in early March 2014 and later provided PSP with additional information in support of his claim. We do not agree.

The record herein establishes that PSP relies on information transmitted by arresting agencies and dispositions from the Administrative Office of Pennsylvania Courts in maintaining its criminal history records, which in this case was obviously incorrect. Again, PSP alleges that Haron's PICS challenge was filed on March 12, 2014. However, he admittedly did not provide PSP with additional information in support of this challenge until March 20, 2014. When PSP attempted to verify this information with the Court of Common Pleas of Lehigh County, it was advised by that court that no information existed relating to Haron's 1991 convictions. Nevertheless, PSP notified Haron on April 28, 2014, that his records were corrected, well before Haron filed his complaint with the trial court and well before the ALJ's hearing.

Moreover, section 9114 of CHRIA requires a correction to be made "[w]ithin 15 days of the detection of inaccurate data in a criminal history record," 18 Pa.C.S. §9114, not within 15 days of receipt of purportedly accurate information from an aggrieved party. This section subsumes some period of time within which PSP could verify whether the information it maintained was correct or incorrect. Here, PSP was able to verify the inaccuracy of its records and inform Haron of the same by April 28, 2014, within 39 days of receipt of documentation from Haron. We do not believe that such a relatively short time period reflects any deliberate or willful intent to maintain inaccurate records on the part of PSP.

19

## Conclusion

Because PSP admittedly violated section 9111 of CHRIA by maintaining inaccurate criminal history record information with respect to Haron, and Haron was consequently unlawfully denied exercise of his Second Amendment constitutional right, Haron has established he was aggrieved and his right to judgment is clear. Therefore, Haron's petition for summary relief is granted and Haron is entitled to actual and real damages, plus costs and attorney fees, which, based upon our determination above, total $6,423.01. However, because Haron has not established that PSP acted willfully herein, Haron's request for exemplary and punitive damages is denied.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cosgrove did not participate in this decision.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Haron,                                 :
              Petitioner                       :
                                               :    No.  220 M.D. 2015
        v.                                     :
                                               :
Pennsylvania State Police,                     :
              Respondent                       :    CASE SEALED

## *ORDER*

AND NOW, this 19th day of September, 2017, the petition of Michael Haron for summary relief is hereby granted and judgment is entered in his favor in the amount of $6,423.01.


_____
PATRICIA A. McCULLOUGH, Judge