# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| K. B.,<br>　　　　　　Petitioner<br><br>　　　　v.<br><br>Delaware County Office of Judicial<br>Support, and Mary J. Walk, in her<br>official capacity as Director of the<br>Delaware County Office of Judicial<br>Support,<br>　　　　　　Respondents | :<br>:<br>:　No. 446 M.D. 2023<br>:<br>:　Argued: December 11, 2024<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

BEFORE:　　HONORABLE RENÉE COHN JUBELIRER, President Judge
　　　　　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　HONORABLE CHRISTINE FIZZANO CANNON, Judge
　　　　　　HONORABLE LORI A. DUMAS, Judge
　　　　　　HONORABLE STACY WALLACE, Judge
　　　　　　HONORABLE MATTHEW S. WOLF, Judge

**OPINION BY**
**JUDGE DUMAS**　　　　　　　　　　　　　　　　　　**FILED: June 27, 2025**

Currently before us is K.B.'s (Petitioner) Application for Summary Relief in the Form of Judgment on the Pleadings (Application). Through his Application, Petitioner requests judgment on the pleadings in his favor regarding his original jurisdiction petition for review (PFR) against Respondents Delaware County Office of Judicial Support and Mary J. Walk, in her official capacity as Director of the Delaware County Office of Judicial Support (individually Office and Director, and collectively Respondents). After thorough review, we grant the Application in part and deny it in part.

## I. BACKGROUND[1]

In January 2023, Petitioner received an unconditional pardon from then-Governor Tom Wolf regarding Petitioner's 2019 conviction in Delaware County for marijuana possession. Thereafter, Petitioner filed a "Petition for Expungement Pursuant to Pa.R.Crim.P. 790" (Expungement Petition) in the Court of Common Pleas of Delaware County (Common Pleas), through which he requested that his marijuana possession conviction be expunged in accordance with the terms of the pardon. In April 2023, the Honorable Anthony D. Scanlon granted the Expungement Petition and, in doing so, ordered Respondents to expunge Petitioner's criminal record regarding that conviction; Judge Scanlon's order was also unconditional, in that it did not require Petitioner to take any additional steps in order for the expungement to take place.[2] Despite this, Respondents declined to expunge

---

[1] We draw the substance of this section from Petitioner's PFR, the exhibits attached thereto, and Petitioner's Application. *See generally* Appl., 4/2/24; PFR, 10/5/23.

[2] Judge Scanlon's order reads as follows, in relevant part:

> All criminal justice agencies upon which this order is served shall expunge all criminal history record information from [Petitioner's] arrest record pertaining to the charges below [in attachment listing 2019 marijuana possession conviction and "[a]ny and all additional charges association with the same [Offense Tracking Number.]"] Criminal history record information includes information collected by criminal justice agencies concerning this individual and arising from the initiation of these criminal proceedings including but not limited to all fingerprints, photographs, identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges, any dispositions arising from the above-captioned proceedings, and all electronic or digital records regarding any of the foregoing.

> The Pennsylvania State Police shall request the Federal Bureau of Investigation to return to them all records pertaining to said arrest(s), which shall be destroyed by said agency upon their receipt of same.

Petitioner's marijuana possession conviction unless and until he settled the outstanding balance of court costs that had accrued as a consequence of his conviction.

This intransigence prompted Petitioner to file suit against Respondents in our Court. Therein, Petitioner asserts that Respondents violated parts of the Criminal History Record Information Act (CHRIA),[3] the Judicial Code (Code),[4] the Pennsylvania Constitution, and the Pennsylvania Rules of Criminal Procedure by declining to expunge his criminal record unless he first paid all outstanding court costs. Petitioner consequently seeks declaratory judgment to that effect, injunctive relief barring Respondents from conditioning the expungement upon such payment, and damages, costs, and fees. Petitioner subsequently filed his Application, in which he asserts that he is entitled on the face of the pleadings to the full breadth of the relief he requested in his PFR, while also stating that Respondents eventually processed Judge Scanlon's order and expunged Petitioner's marijuana possession conviction, but only after Petitioner had filed suit against them. Thereafter, Respondents filed a response to Petitioner's Application, via which they oppose his requested relief.

---

The information required under Pa.R.Crim.P. 790 appears on the attached page(s) which is hereby incorporated into this ORDER by reference.

PFR, Ex. A.
[3] 18 Pa.C.S. §§ 9101-9183.
[4] 42 Pa.C.S. §§ 101-9913.

3

## II. DISCUSSION[5]

Petitioner offers several arguments in support of his Application, which we summarize as follows. First, he is entitled to judgment on the pleadings regarding Count I of his PFR, because Respondents had a ministerial, nondiscretionary duty to process and implement Judge Scanlon's order as written, but nevertheless failed to do so. Petitioner's Br. at 9-15. Second, he is entitled to judgment on the pleadings regarding Count II, because Respondents' refusal to give effect to that order violated the duties imposed upon them through CHRIA; relatedly, he must be awarded actual damages and attorney's fees on account of this CHRIA violation and, because Respondents' CHRIA violation was willful, punitive damages as well. *Id.* at 17-27. Finally, he is entitled to judgment on the pleadings regarding Count III, because Respondents' refusal to process the expungement order harmed his reputation in violation of article I, section 1 of the Pennsylvania Constitution.[6] *Id.* at 23-25.

We agree with Petitioner that he is entitled to judgment on the pleadings regarding Count I. It is beyond cavil that lower courts' clerks of court and prothonotaries occupy a purely ministerial role, in which they may exercise only the

---

[5] When ruling on a motion for judgment on the pleadings, we view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted are considered against the opposing party. We consider only the pleadings themselves and any documents properly attached to them[, and will] grant judgment on the pleadings only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law.

*Stilp v. Gen. Assembly*, 929 A.2d 660, 662 (Pa. Cmwlth. 2007) (cleaned up). "Such a motion may be granted only where the law is clear that a trial would be a fruitless exercise." *Stoppie v. Johns*, 720 A.2d 808, 809 (Pa. Cmwlth. 1998).

[6] "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

4

power vested in them via rule or statute, but do not have the discretionary ability to apply their own interpretation to those sources or to choose which ones to follow or disregard. *See In re Admin. Ord. No. 1-MD-2003*, 936 A.2d 1, 9 (Pa. 2007); *Warner v. Cortese*, 288 A.2d 550, 552 (Pa. Cmwlth. 1972); *see also* 42 Pa.C.S. §§ 2737, 2757 (enumerating the office of the prothonotary and the office of the clerk of courts' statutory powers and duties); PA. CONST. art. V, Sched. to Judiciary art. § 15 ("Until otherwise provided by law, . . . the offices of prothonotary and clerk of courts of the court of common pleas of the judicial district . . . shall . . . perform the duties of the office and . . . maintain and be responsible for the records, books and dockets[.]"). "Nothing in this grant of authority suggests the power to interpret statutes and to challenge actions of the court that the clerk [or prothonotary] perceives to be in opposition to a certain law." *In re Admin. Ord.*, 936 A.2d at 9; *accord Com. v. Williams*, 106 A.3d 583, 588 (Pa. 2014) ("The clerk of courts and prothonotary are not permitted to interpret statutes or challenge court actions."). "Therefore, if documents tendered for filing are proper on their face and in conformity to rules of court, a prothonotary [or clerk of courts] does not have discretion to refuse to enter them[.]" *Thompson v. Cortese*, 398 A.2d 1079, 1081 (Pa. Cmwlth. 1979).

In this instance, Respondents clearly exceeded their legal authority by attempting to condition expungement of Petitioner's marijuana possession conviction upon his satisfaction of all related, outstanding court costs. As our Supreme Court has made unmistakably clear, an unconditional pardon necessitates expungement of the implicated criminal offense. *Com. v. C.S.*, 534 A.2d 1053, 1054 (Pa. 1987). Accordingly, a trial court must issue an order directing that a criminal conviction be expunged upon receiving notice that a pardon has been issued. *See id.*; 18 Pa.C.S. § 9122(a.1). There is nothing in either rule or statute that allows a

5

clerk or prothonotary to ignore such an order once it has been issued, or to place additional, extratextual conditions upon its docketing or the implementation of its terms.[7] Given this, Respondents were required to perform their ministerial duties by following Judge Scanlon's order and expunging Petitioner's marijuana possession conviction, and acted unlawfully by failing to do so.

Next, we turn to Petitioner's claim in Count II that Respondents' failure to docket and disseminate the expungement order violated CHRIA. Per Section 9111(a) of CHRIA, "[i]t shall be the duty of every criminal justice agency within the Commonwealth to maintain complete and accurate criminal history record information and to report such information at such times and in such manner as required by the provisions of this chapter or other applicable statutes." 18 Pa.C.S. § 9111(a). CHRIA expressly defines "criminal justice agency," in relevant part, as "[a]ny court, including the minor judiciary, with criminal jurisdiction[.]" *Id.* at § 9102. Notably, this does not state that a court's employees or officers are subsumed within the definition; rather, by its plain terms, Section 9102 establishes that only *a court itself* can constitute a criminal justice agency. *Cf. Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) (cleaned up) (although a court must "listen attentively to what a statute says[,] [a court] must also listen attentively to what it does not say"). It therefore stands to reason that the duties imposed by Section 9111 fell upon the Office as a subsidiary component of Common Pleas, but not upon Director. *See Haron v. Pa. State Police*, 171 A.3d 344, 353 (Pa.

---

[7] Indeed, the only duty expressly imposed by the relevant rules and statutes is that "[t]he clerk of courts shall serve a certified copy of the [expungement] order to each criminal justice agency identified in the court's order and to all other entities required to be notified by statute." Pa.R.Crim.P. 790(c)(2). This directive necessarily imposes an implied antecedent responsibility to both docket that order and to complete the expungement of the subject offense or offenses, for without doing so, there would be nothing to transmit to the relevant agencies and entities.

Cmwlth. 2017) (noting that "the record-keeping provisions of CHRIA apply almost exclusively to governmental units, with the exception of one provision that relates to the use of criminal records by employers"); *cf.* 18 Pa.C.S. § 9183(a) (authorizing the Attorney General to file suit "against any person [or] agency . . . to enjoin any criminal justice agency . . . or individual violating the provisions of this chapter or to compel such agency . . . or person to comply with the provisions of this chapter"). Accordingly, the Office violated CHRIA by failing to docket and disseminate the expungement order, whereas Director did not.[8]

This brings us to Petitioner's related assertion that he has clearly established at this juncture that he is entitled to an award of actual damages, attorney's fees, and punitive damages on account of Respondents' violation of CHRIA. We only agree with him in part. Per Section 9183(b)(1) of CHRIA, "[a]ny person aggrieved by a violation" of CHRIA itself or any related rules or regulations may file suit for damages against the alleged perpetrator of the violation. 18 Pa.C.S. § 9183(b)(1). In the event a person is determined to have been aggrieved by the violation, they are "entitled to actual and real damages of not less than $100 for each violation and to reasonable costs of litigation and attorney's fees." *Id.* § 9183(b)(2).

"Aggrieved" is not expressly defined in CHRIA; however, as our Supreme Court has noted in the past, that term "has acquired a particular meaning in the law[,]" which controls unless the General Assembly has seen fit to expressly define it to mean something else. *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1149 (Pa. 2009). Specifically, an individual is "aggrieved" only if their interest in the matter at hand is substantial, direct, and immediate. *Ams. for Fair*

---

[8] Given this, we need not address Respondents' argument that Director has official and/or sovereign immunity against Petitioner's CHRIA claim. *See* Resp'ts' Br. at 11-13; Resp'ts' Sur-Reply Br. at 3-4.

*Treatment, Inc. v. Phila. Fed'n of Teachers*, 150 A.3d 528, 533 (Pa. Cmwlth. 2016). A substantial interest "must be distinct from and surpass the interest of all citizens in procuring compliance with the law." *Id.* A direct interest requires "a causal connection between harm to the [petitioner's] interest and the alleged violation of law that is the subject of the action." *Id.* Finally, an immediate interest exists "if the causal connection is not remote or speculative." *Id.* As the General Assembly did not see fit to define "aggrieved" in a different way for purposes of CHRIA, we conclude that this generally understood definition applies here as well.

It follows, then, that Petitioner was aggrieved by the Office's violation of CHRIA. As already discussed, Petitioner was pardoned by Governor Wolf and had his Expungement Petition subsequently granted by Judge Scanlon. Consequently, Respondents had a ministerial duty to process Judge Scanlon's order and expunge Petitioner's marijuana possession conviction. They, however, failed to do so, which caused the Office to maintain inaccurate information regarding Petitioner's criminal record and to fail to notify all legally mandated entities about the expungement. In other words, the Office's intransigence resulted in Petitioner being improperly listed as having a marijuana possession conviction for some period of time beyond which it was proper for that conviction to be listed on Petitioner's criminal record. Such a state of affairs, which is evident on the face of the pleadings, undoubtedly renders Petitioner aggrieved for purposes of CHRIA. Petitioner is therefore entitled at this juncture to an award of actual costs and attorney's fees against the Office.

The same is not true regarding his request for punitive damages, however. In instances where the perpetrator is found to have violated CHRIA or the related rules and regulations in a "willful" manner, the aggrieved individual is

entitled to "[e]xemplary and punitive damages of not less than $1,000 nor more than $10,000[.]" 18 Pa.C.S. § 9183(b)(2). "Willful" is not explicitly defined in CHRIA, so we must construe that term in accordance with its "common and approved usage." *P.R. v. Pa. Dep't of Pub. Welfare*, 759 A.2d 434, 437 (Pa. Cmwlth. 2000) (cleaned up). "In ascertaining the common and approved usage or meaning, a court may resort to the dictionary definitions of the terms left undefined by the legislature." *Mountz v. Columbia Borough*, 260 A.3d 1046, 1050 n.4 (Pa. Cmwlth. 2021) (quoting *Leventakos v. Workers' Comp. Appeal Bd. (Spyros Painting)*, 82 A.3d 481, 484 n.4 (Pa. Cmwlth. 2013)). Per Black's Law Dictionary, a "willful" act is one that was "[d]one wittingly or on purpose, as opposed to accidentally or casually; voluntary and intentional, but not necessarily malicious. The word connotes blameworthiness." *Willful*, Black's Law Dictionary (12th ed. 2024). Furthermore, "[a] voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong. The term willful is stronger than voluntary or intentional; it is traditionally the equivalent of malicious, evil, or corrupt." *Id.* (cleaned up). The high bar set by this definition, when coupled with Respondents' assertion that their refusal to process Judge Scanlon's order was done in good faith,[9] necessitates the creation of a proper factual record in order for us to determine whether the Office's CHRIA violation was willful.

---

[9] Respondents assert that they justifiably believed that they were without authority to waive Petitioner's court costs because neither Governor Wolf's pardon nor the Expungement Order or CHRIA itself expressly authorized them to do so. *See* Resp'ts' Br. in Opp. to Appl. at 10-11. Respondents also maintain that they interpreted an order from Common Pleas' president judge to process an expungement order in a similar matter without satisfaction of outstanding court costs as only applying to that specific case, rather than as a broadly applicable edict. *Id.* at 10.

Finally, we conclude that we are unable to grant judgment on the pleadings in Petitioner's favor regarding Count III, in which he claims that Respondents' refusal to process and promulgate Judge Scanlon's order violated his constitutional right to reputation. Every individual in our Commonwealth has a fundamental right to protect their reputation, which is secured through article I, section 1 of the Pennsylvania Constitution. *R.W. v. Dep't of Educ. (Pro. Standards & Pracs. Comm'n)*, 304 A.3d 79, 93 (Pa. Cmwlth. 2023), *appeal granted sub nom. R.W. v. Dep't of Educ.*, 321 A.3d 862 (Pa. 2024). "Although it is not a tangible right, individuals have a fundamental right to protect their reputation from false or misleading information that affects how they are regarded by their community." *Id.* Since "[e]xpungement is a mechanism utilized to protect an individual's reputation from the stigma that accompanies an arrest record[,]" *Com. v. Wallace*, 97 A.3d 310, 319 (Pa. 2014), it follows that the failure to properly process and promulgate an expungement order may violate the affected individual's reputational rights by causing them to suffer unnecessary or inaccurate stigma.

Even so, it is important to recognize that an individual's reputation is based upon others' perceptions about them. *See Street Road Bar & Grille, Inc. v. Pa. Liquor Control Bd.*, 876 A.2d 346, 356-57 (Pa. 2005) (defining "repute" as "the account or consideration of a person held by others, *i.e.,* what people think of another, reputation"). Thus, it is theoretically possible for an individual to suffer no reputational injury on account of inaccurate criminal record information if that information is not known in their community or by those with whom they interact. We consequently conclude that a determination regarding whether Respondents' handling of Judge Scanlon's order violated Petitioner's constitutional right to reputation cannot be made on the pleadings alone.

## III. CONCLUSION

In accordance with the foregoing analysis, we grant Petitioner's Application in part regarding Counts I and II. Specifically, we grant declaratory judgment in his favor as to his claims that Respondents failed to perform their ministerial, nondiscretionary duty to docket and disseminate Judge Scanlon's order, as well as that the Office violated CHRIA and that he is entitled to actual damages and attorney's fees as a result. We also deny the Application in part as moot regarding Petitioner's request for injunctive relief, due to the fact that Respondents have already given him the relief he sought by processing and promulgating Judge Scanlon's order after the commencement of this litigation. Finally, we deny the remainder of Petitioner's Application.

 

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K. B.,                                         :
                    Petitioner          :
                                        :    No. 446 M.D. 2023
                v.               :
                                          :
Delaware County Office of Judicial            :
Support, and Mary J. Walk, in her             :
official capacity as Director of the          :
Delaware County Office of Judicial            :
Support,                                       :
                    Respondents         :

# **O R D E R**

AND NOW, this 27th day of June, 2025, it is hereby ORDERED:

1. Petitioner K.B.'s Application for Summary Relief in the Form of Judgment on the Pleadings (Application) is GRANTED IN PART, as to his request in Count I of his petition for review (PFR) for declaratory judgment against Respondents Delaware County Office of Judicial Support (Office), and Mary J. Walk, in her official capacity as Director of the Delaware County Office of Judicial Support, and his request in Count II of his PFR for declaratory judgment, actual damages, and attorney's fees against the Office;

2. Petitioner's Application is DENIED AS MOOT IN PART, to the extent he requests injunctive relief through his PFR against Respondents;

3. Petitioner's Application is otherwise DENIED.

                                        _____
                                        **LORI A. DUMAS, Judge**