IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Previte,
               Appellant

    v.

Erie County Board of Elections

:
:
:
:
:
:
:
:
:

No. 814 C.D. 2023

Argued: April 10, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE CEISLER                           FILED:  July 31, 2024

Appellant Michelle Previte (Previte) appeals from the Court of Common Pleas of Erie County's (Common Pleas) June 28, 2023 order. Through that order Common Pleas ruled, in relevant part, that the Pennsylvania Election Code (Election Code)[1] prevented Previte from using the Right-to-Know Law (RTKL)[2] to obtain digital images of absentee and mail-in ballots that had been cast in the 2020 General Election. After thorough review, we reverse Common Pleas' order in part.

## **I. Background**

On August 1, 2022, Previte submitted three RTKL request forms to Appellee Erie County Board of Elections (Board), through which she sought several kinds of records that pertained to the 2020 General Election. The first request was for "an electronic copy of the images of all mail-in ballots (including absentee ballots) from

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

the November 2020 election" (Item 1). Reproduced Record (R.R.) at 47a. The second request was for "an electronic copy of the images of all outer envelopes (containing each voter's declaration) for the mail-in ballots (including absentee ballots) from the November 2020 election" (Item 2). *Id.* at 48a. Finally, the third request was for "an electronic copy of the images of all polling place ballots from the November 2020 election" (Item 3). *Id.* at 49a. On August 2, 2022, the Board invoked its right to extend the deadline for responding to this request by 30 days. *Id.* at 43a.[3] On September 2, 2022, the Board denied Previte's request, because the sought-after documents were not public records, per Section 308 of the Election Code, 25 P.S. § 2648.[4]

Previte appealed this denial to the Office of Open Records (OOR), which issued a Final Determination on October 20, 2022. *See id.* at 82a-90a. Therein, OOR affirmed the Board with regard to Item 3 (polling place ballots), but reversed as to Items 1 and 2 (mail-in ballots; absentee ballots; and those ballots' outer envelopes). *Id.* at 88a-89a.

The Board appealed OOR's Final Determination to Common Pleas on November 18, 2022,[5] which then held a *de novo* hearing on the matter on February

---

[3] Under certain circumstances, Section 902 of the RTKL permits an agency to extend the permitted response time, which is normally 5 business days, by up to an additional 30 calendar days. 65 P.S. § 67.902.

[4] In relevant part, Section 308 provides that the records of "board[s] of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, *except the contents of ballot boxes and voting machines and records of assisted voters*," shall be open to public inspection. 25 P.S. § 2648 (emphasis added).

[5] Previte stated in her brief before Common Pleas that she no longer sought to obtain the records she had requested through Item 2. *See* R.R. at 20a. This, coupled with Previte's failure to **(Footnote continued on next page…)**

10, 2023.[6] Thereafter, Common Pleas issued an order on June 28, 2023, through which it denied Previte's request as to Items 1 and 2. *Id.* at 93a.[7] In its accompanying opinion, Common Pleas explained that it had done so for two reasons. First, Previte had sought "images of ballots that, pursuant to the new voting system implemented in Pennsylvania for the November 2020 election, are electronically kept within the voting machines and stored as inseparable three-page documents." *Id.* at 6a (cleaned up). Common Pleas concluded that such images were the contents of voting machines and, thus, were shielded from RTKL requests by virtue of Section 308 of the Election Code. *Id.* Furthermore, Common Pleas stated Requester had failed to provide "any evidence showing that she is a qualified elector of [Erie C]ounty." *Id.* Thus, even if the requested records were otherwise subject to release, Requester did not have standing to request or obtain them from the Board. *Id.*

This appeal followed shortly thereafter.

## II. Discussion

Previte offers several arguments for our consideration, which we reorder and summarize as follows. First, Common Pleas erred by raising the question of Previte's standing on its own initiative and by failing to take judicial notice that Previte is a registered voter in Erie County. Previte's Br. at 13-14. Second, Common Pleas erred

---

appeal OOR's Final determination, left Item 1 as the sole remaining disputed portion of her RTKL request.

[6] Common Pleas was the ultimate finder of fact in this matter, as ordained by the RTKL, and consequently conducted a *de novo*, plenary review of OOR's Final Determinations. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

[7] Common Pleas appears to have disregarded the fact that, by this point, Previte had already abandoned her efforts to obtain records responsive to Item 2. *See supra* note 5.

by failing to recognize that Sections 1307-D(a)[8] and 1309(a)[9] of the Election Code designate images of absentee and mail-in ballots as public records. *Id.* at 8-10. Finally, digital images of cast absentee and mail-in ballots cannot be considered the contents of voting machines, so Common Pleas erred by ruling that such images where shielded from public disclosure by Section 308 of the Election Code. *Id.* at 10-13.

### A. Previte's Standing

We agree with Previte that Common Pleas erred by addressing the issue of whether she had standing to request the aforementioned records. "Standing is a justiciability concern—a threshold requirement that must be established 'prior to judicial resolution of a dispute.'" *Pa. State Educ. Ass'n v. Pub. Sch. Emps.' Ret. Bd.*, 311 A.3d 1017, 1028 (Pa. 2024) (quoting *Pittsburgh Palisades Park, LLC v. Com.*, 888 A.2d 655, 659 (Pa. 2005)) (cleaned up). Generally speaking, a party must be "aggrieved" to have standing, in that the party must have an interest in the matter that is substantial, direct, and immediate. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 282-83 (Pa. 1975).

> A substantial interest is one in which there is "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *William Penn*, 346 A.2d at 282. A "direct" interest requires a showing that the matter complained of causes harm to the party's interest. *Upper Bucks Cnty. Vocational-Tech. Sch. Educ. Ass'n v. Upper Bucks Cnty. Vocational-Tech. Sch. Joint Comm.*, 474 A.2d 1120 (Pa. 1984). An "immediate" interest is something more than a "remote consequence" and centers on the causal nexus and proximity between the action complained of and the injury to the party challenging it. *William Penn*, 346 A.2d at 283;

---

[8] Added by the Act of October 31, 2019, P.L. 552, 25 P.S. § 3150.17(a).

[9] Added by the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.9(a).

> *Skippack Cmty. Ambulance Ass'n, Inc. v. Twp. of Skippack*, 534 A.2d 563 (Pa. Cmwlth. 1987). The requirement that the interest be "immediate" is also met where it falls within the "zone of interests sought to be protected by the statute or constitutional guarantee in question." *Upper Bucks Cnty.*, 474 A.2d at 1122. Finally, the rationale underlying the requirement that the party be "aggrieved" or "adversely affected" by the action at issue is to ensure that a legal challenge is made by the appropriate party.

*Pittsburgh Tr. for Cultural Res. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 604 A.2d 298, 303-04 (Pa. Cmwlth. 1992) (cleaned up). In matters such as this one, where an individual has filed an RTKL request with a county board of elections, Section 308 of the Election Code further restricts standing to seek such records to "any qualified elector of the county[.]" 25 P.S. § 2648.[10] In other words, someone who is not a registered voter in a specific county does not have standing to seek records from that county's elections board. *See Honey v. Lycoming Cnty. Offs. of Voter Servs.*, 312 A.3d 942, 946 n.5 (Pa. Cmwlth. 2024).

Even so, it is well settled that "standing is not a jurisdictional question." *In re Paulmier*, 937 A.2d 364, 368 (Pa. 2007). Rather, it is a "prudential" concern that can be waived in the event an opposing party does not raise it at the earliest possible juncture. *Pa. State Educ. Ass'n*, 311 A.3d at 1028; *Diop v. Bureau of Pro. & Occupational Affs., State Bd. of Cosmetology*, 272 A.3d 548, 559 (Pa. Cmwlth. 2022). A court cannot step into the breach in instances where a party fails to challenge their opponent's standing, and commits legal error if it elects to do so on its own motion. *In re Gun Range, LLC*, 311 A.3d 1242, 1248 (Pa. Cmwlth. 2024).

---

[10] Per Section 102(t) of the Election Code: "The words "qualified elector" shall mean any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." 25 P.S. § 2602(t).

In this instance, the Board admits that it did not challenge Previte's standing until March 30, 2023, when it submitted post-hearing supplemental briefs. *See* Board's Br. at 30-32. The Board justifies this delay by asserting that "[s]tanding could not have been challenged until after the evidentiary record was closed[,]" ostensibly because Previte had failed to proactively offer proof at the February 10, 2023 hearing that she was a qualified elector in Erie County. *See id.* This argument is without merit. To state the obvious, the Board is the local agency that is responsible for administering elections in Erie County. *See* Section 301(a) of the Election Code, 25 P.S. § 2641(a). It therefore has actual or constructive knowledge of which registered voters reside within its domain. As such, there was nothing that should have impeded the Board's power to question Previte's elector status as early as its September 2, 2022 denial of her RTKL request, or its ability to raise that question either before OOR or at an earlier stage of the proceedings before Common Pleas. Furthermore, even if the Board did not have such actual or constructive knowledge, it still claims that Previte never asserted to Common Pleas that she was a qualified elector. This omission, which the Board dates to as early as December 8, 2022, certainly should have put the Board on notice that something may have been amiss about Previte's elector status. Accordingly, the Board waived its ability to challenge Previte's standing by failing to raise that issue at the earliest possible point, and Common Pleas erred by both disregarding that fact and instead reaching the merits of that question.

B. Public Records in the Context of Absentee Ballots and Mail-In Ballots

Moving on, we also agree with Previte that Common Pleas erred by concluding that images of cast absentee and mail-in ballots are not public records that are subject to disclosure in response to an RTKL request. Generally speaking,

the purpose of the RTKL is "to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials[,] and make public officials accountable for their actions." *Off. of Governor v. Raffle*, 65 A.3d 1105, 1107 n.1 (Pa. Cmwlth. 2013). Accordingly, local agencies are statutorily required to "provide public records [to individuals who request them] in accordance with [the RTKL]." Section 302(a) of the RTKL, 65 P.S. § 67.302(a). However, that does not mean that all local agency records are "public" and eligible for dissemination upon request. Per Section 305(a) of the RTKL:

> A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
>
> . . . .
>
> (3) the record is exempt from disclosure under any other [f]ederal or [s]tate law or regulation or judicial order or decree.

65 P.S. § 67.305(a); *accord* Section 102 of the RTKL, 65 P.S. § 67.102 (defining "public record" in relevant part as "[a] record, including a financial record, of a Commonwealth or local agency that . . . (2) is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree"). In other words, the RTKL's presumption that all records possessed by a local or state agency are public in nature, and are thus disclosable to a requester, yields where a statutory exemption exists for a certain kind of record.

Through her second argument, Previte posits that Sections 1307-D(a) and 1309(a) of the Election Code dictate that images of cast absentee and mail-in ballots are public records. This assertion presents a pure question of statutory interpretation; thus, "our standard of review [here] is *de novo*, and our scope of review is plenary and non-deferential." *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020).

7

> The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com*[.] *v. McClintic*, . . . 909 A.2d 1241 ([Pa.] 2006). Thus, statutory construction begins with examination of the text itself. [*Se.*] *Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).
>
> Moreover, although we must "listen attentively to what a statute says[,] [o]ne must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, . . . 788 A.2d 955, 962 ([Pa.] 2001). We may not insert a word the legislature failed to supply into a statute. *Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth. 2004).

*Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa. C.S. § 1921(c)). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). Regardless of whether a statute is deemed ambiguous or not, our rules of construction forbid a

court from adopting an interpretation that will produce "a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa. C.S. § 1922(1). Furthermore,

> [w]hen construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. *Com. v. Mayhue*, 639 A.2d 421, 439 (Pa. 1994). Statutory language must be read in context, "together and in conjunction" with the remaining statutory language. [*Pa. Gaming Control Bd.*] *v. Off. of Open Recs.*, 103 A.3d 1276, 1284-85 (Pa. 2014) (citing *Bd. of Rev. of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).
>
> . . . .
>
> A fundamental principle in statutory construction is that we must read statutory sections harmoniously. *Off. of Open Recs.*, 103 A.3d at 1284-85. Parts of a statute that are *in pari materia*, *i.e.*, statutory sections that relate to the same persons or things or the same class of persons and things, are to be construed together, if possible, as one statute. 1 Pa. C.S. § 1932. "If they can be made to stand together, effect should be given to both as far as possible." *Off. of Open Recs.*, 103 A.3d at 1284 (quoting *Kelly v. City of Phila.*, 115 A.2d 238, 245 (Pa. 1955)). In ascertaining legislative intent, statutory language is to be interpreted in context, with every statutory section read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute" as a whole. *Bd. of Rev. of Taxes*, 4 A.3d at 622. We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions, to be effective. 1 Pa. C.S. § 1922. Importantly, this presumption requires that statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so. *Cozzone ex rel. Cozzone v. Workers' Comp. Appeal Bd. (PA Mun*[.]*/E*[.] *Goshen Twp.)*, 73 A.3d 526 (Pa. 2013); *Off. of Open Recs.*, 103 A.3d at 1284-85.

*Tr. Under Agreement of Taylor*, 164 A.3d 1147, 1155, 57 (Pa. 2017).

The validity of Previte's second argument hinges upon the interplay between three aforementioned Election Code provisions: Section 308, Section 1307-D(a), and Section 1309(a). The first, Section 308, reads as follows:

> The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, **except the contents of ballot boxes and voting machines** and records of assisted voters, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto: Provided, however, That such public inspection thereof shall only be in the presence of a member or authorized employe of the county board, and shall be subject to proper regulation for safekeeping of the records and documents, and subject to the further provisions of this act: And provided further, That general and duplicate returns, tally papers, affidavits of voters and others, and all other papers required to be returned by the election officers to the county board sealed, shall be open to public inspection only after the county board shall, in the course of the computation and canvassing of the returns, have broken such seals and finished, for the time, their use of said papers in connection with such computation and canvassing.

25 P.S. § 2648 (emphasis added). The second, Section 1307-D(a), states:

> **All official mail-in ballots,** files, applications for ballots and envelopes on which the executed declarations appear and all information and lists **are designated and declared to be public records** and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

25 P.S. § 3150.17(a) (emphasis added). Finally, the third, Section 1309(a), provides:

10

> **All official absentee ballots**, files, applications for such ballots and envelopes on which the executed declarations appear, and all information and lists **are hereby designated and declared to be public records** and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

25 P.S. § 3146.9(a) (emphasis added).

The phrases "official absentee ballots" and "official mail-in ballots," which are of critical import in this matter, are neither defined in these statutory provisions nor anywhere else in the broader Election Code. It is thus facially unclear whether these terms refer to completed ballots or uncompleted ballots. Even so, the meanings of each phrase is ultimately clear. All of the other items (applications, files, filled-out envelopes, lists, etc.) mentioned in Sections 1307-D(a) and 1309(a) refer to materials relating to the process that produces a completed ballot. It would be unreasonable to conclude that the General Assembly would have omitted those completed ballots themselves from this slate of covered materials. Furthermore, as both statutory provisions expressly restrict dissemination of identifying voter information,[11] such concerns would not be present with regard to uncompleted ballots themselves, as such ballots obviously do not contain cast votes. Given this, the most logical reading of both "official absentee ballots" and "official mail-in ballots" is that these phrases refer to *completed* ballots, rather than those that are uncompleted.

---

[11] As noted *supra*, both Sections 1307-D(a) and 1309(a) state in relevant part that "no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security." 25 P.S. §§ 3150.17(a), 3146.9(a).

11

This reading creates an apparent conflict between Section 308 and Sections 1307-D(a) and 1309(a). The former shields completed ballots and digital copies thereof from RTKL requests once those ballots have been deposited into a ballot box or recorded through a voting machine. *See Honey*, 312 A.3d at 950-54. The latter two, however, flatly establish without qualification that completed absentee and mail-in ballots are public records. The conflict, therefore, is between the general terms of Section 308 and the more specific language of Sections 1307-D(a) and 1309(a). Per Section 1933 of the Statutory Construction Act of 1972:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa. C.S. § 1933. In order to harmonize these ostensibly contradictory parts of the Election Code, we conclude that Sections 1307-D(a) and 1309(a) of the Election Code create exceptions to Section 308's ballot protections. These exceptions establish that completed absentee and mail-in ballots are to be treated as public records once those ballots have been removed from the ballot box or voting machine, and that those ballots can be obtained through an RTKL request as long as they follow the Election Code's rules of disclosure and do not include any information that identifies (or is reasonably likely to facilitate the identification of) the individuals who cast those ballots.

12

## III. Conclusion

In light of the foregoing analysis, we conclude that images of completed absentee and mail-in ballots are public records that can be obtained through an RTKL request, and consequently reverse Common Pleas' June 28, 2023 order in part, to the extent that the lower tribunal ruled to the contrary.[12]

      ELLEN CEISLER, Judge

---

[12] We decline to reach Previte's remaining argument, due to our resolution of these appeals in her favor.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Previte,                :
            Appellant     :
                          :
     v.                  :  No. 814 C.D. 2023
                          :
Erie County Board of Elections  :

# **O R D E R**

AND NOW, this 31ˢᵗ day of July, 2024, the Court of Common Pleas of Erie County's (Common Pleas) June 28, 2023 order is REVERSED IN PART, with regard to Common Pleas' ruling that images of completed absentee and mail-in ballots are not public records that can be obtained through a Right-to-Know Law[13] request.

_____
ELLEN CEISLER, Judge

---

[13] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Previte,                                    :
              Appellant            :
                           :
           v.                               :    No. 814 C.D. 2023
                           :
Erie County Board of Elections       :    Argued: April 10, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

CONCURRING OPINION
BY JUDGE McCULLOUGH                    FILED: July 31, 2024

I fully agree with the Majority's ultimate conclusion that digital images of completed absentee and mail-in ballots are public records that can be obtained through a Right-to-Know Law[1] (RTKL) request. However, I continue to strongly disagree with *Honey v. Lycoming County Offices of Voter Services*, 312 A.3d 942 (Pa. Cmwlth. 2024) (*Honey*), upon which the Majority relies, in part. I dissented to that opinion, and I continue to disagree with the holding for the reasons set forth in my dissent.

While I acknowledge that this Court's decision in *Honey* found that scanners were part of a voting machine and that scanned ballots and digital copies were exempt from public disclosure, I continue to believe that Section 308 of the Pennsylvania Election Code (Election Code)[2] does **not** shield completed ballots and

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

digital copies thereof from RTKL requests once those ballots have been scanned by an electronic voting system. In my view, the Election Code clearly provides all such documents are subject to public disclosure.

The record in this case reflects that Erie County uses optical scanners to scan, tabulate, and create an image of each cast vote and are part of the County's electronic voting system. (Previte's Br., at 7.) As I explained in my dissent in *Honey*, by definition, scanners are not ballot boxes or voting machines. They are separate and distinct parts of the voting process, the purpose of which is to tabulate vote data. Citing *Honey*, the Majority states that Section 308 "shields completed ballots and digital copies thereof from RTKL requests once those ballots have been deposited into a ballot box or recorded through a voting machine." *Previte v. Erie County Board of Elections*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 814 C.D. 2023, filed July 31, 2024), slip op. at 12. To the extent the Majority suggests that digital images of completed ballots are protected from public disclosure in its discussion of Section 308, I cannot agree with that portion of the Majority's analysis. In other words, digital copies that have been scanned through a scanner are not shielded from public disclosure because scanners are NOT part of the voting machine, and, secondly, there is no violation of secrecy in voting as no correlation could be made between the votes on a digital copy and the identity of the voter.

Furthermore, I note my agreement with Judge Wolf's observation in his concurring opinion (CO) that the Majority's construction of the Election Code is potentially problematic because it, "when viewed together with our decision in [*Honey*], treats in-person and mail/absentee ballots—and voters—differently[.]" *Previte*, ___ A.3d at ___, (Pa. Cmwlth., No. 814 C.D. 2023, filed July 31, 2024) (Wolf, J., concurring op.) slip op. at 1. In his CO, Judge Wolf goes to great lengths

to discuss the confusion that is now created between the holding of the Majority in *Honey* and this case. However, this confusion is not created by unclear terms in the Election Code as the CO claims, but rather in not interpreting the Election Code in accord with its plain meaning and definitions.

In my view, this discord between the holding in this case and in *Honey* could have been avoided had this Court adopted the interpretation of the Election Code that I outlined in *Honey*. Specifically, Section 308 of the Election Code provides in relevant part:

> The **records** of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, **except the contents of ballot boxes and voting machines** and records of assisted voters, **shall be open to public inspection**, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto[.]

25 P.S. § 2648 (emphasis added). Relevant to Erie County's use of optical scanners to tabulate votes, Section 1101-A of the Election Code states:

> "**Automatic tabulating equipment**" means any apparatus which **automatically examines and computes votes** registered on paper ballots, ballot cards or district totals cards or votes registered electronically **and which tabulates such votes**.

25 P.S. § 3031.1, added by the Act of July 11, 1980, P.L. 600, 25 P.S. §303.1 (emphasis added).

Clearly, scanners are used to examine, compute, and tabulate votes, which places them within the ambit of Section 1101-A as "automatic tabulating

equipment." As such, the scanners are not ballot boxes or voting machines and must be viewed as separate and distinct parts of the voting process, the purpose of which is to tabulate vote data. Simply by virtue of the Election Code definitions, automatic tabulating equipment cannot be construed as a voting machine or ballot box without ignoring the clear intent of the legislature. Accordingly, Section 308 does not exempt scanned ballots from public access.

The Majority's holding today that absentee and mail-in ballots **are public records** subject to public disclosure through RTKL requests is entirely consistent with my interpretation of the Election Code as set forth in *Honey*. Per my dissent in *Honey,* I would have held that digital images of in-person votes put through a scanner are also public records subject to disclosure. How else could any objector make a challenge to the computation or validity of votes if access to the results is denied in this manner? The inconsistency noted in Judge Wolf's CO between the Majority's treatment of in-person versus mail-in/absentee ballots could have been avoided from the outset had we adopted this approach.

Lastly, with regard to our constitutional responsibility to maintain secrecy in voting,[3] there is clearly **no infringement upon one's right to vote in secret** by allowing **digital copies** of **any ballot** — **whether cast in person or via absentee/mail-in ballot** — to be produced. There is simply no basis in the record to identify the voter who cast each individual ballot or other identifying information tying a ballot to its voter.

Therefore, I am only able to respectfully concur in the result.

_____
PATRICIA A. McCULLOUGH, Judge

---

[3] *See* Pa. Const. art. VII, § 4 (stating: "All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Previte,              :
           Appellant          :
                                   :
        v.                      : No. 814 CD 2023
                                   :
Erie County Board of Elections  : Argued: April 10, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

CONCURRING OPINION
BY JUDGE WOLF                FILED: July 31, 2024

I join the Majority Opinion in full because I agree that, as a matter of statutory construction, the Pennsylvania Election Code[1] (Election Code or Code) makes absentee and mail-in ballots and images thereof "public records" subject to disclosure through the Right-to-Know Law[2] (RTKL). I write separately to point out that this does not result from the clear language of the Election Code, but rather from interpretive rules we apply when statutes are less than clear. I also wish to explain that this construction, viewed together with our decision in *Honey v. Lycoming County Offices of Voter Services*, 312 A.3d 942 (Pa. Cmwlth. 2024), treats in-person and mail/absentee ballots—and voters—differently, which may be problematic when a fundamental right like the elective franchise is implicated.

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.
[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Section 308 of the Election Code provides for public access to voting records, but makes an exception for, inter alia, "the contents of ballot boxes and voting machines," which shall not be open to public inspection. 25 P.S. § 2648. This was part of the Election Code when it was originally enacted in 1937. The Code did not then, and still does not, define "voting machine." When the General Assembly amended the Code in 1980 to provide for the use of "electronic voting systems," it defined that term, but still did not define "voting machine." *See* Section 1101-A of the Code.[3] The Election Code was "not a model of clarity" as to what constitutes a "voting machine" and has not improved in that regard across several amendments. *Honey*, 312 A.3d at 950.

In *Honey*,[4] the Court confronted that lack of clarity in a case of first impression. There, the RTKL request was for digital copies, or reports, of ballots *cast in person*. We construed Section 308's exception for "contents of ballot boxes and voting machines" to encompass any digital record of a cast-in-person ballot contained within a component of an electronic voting system, such as an optical scanner, because such a scanner is a "voting machine." *Id.* at 953-54. As the Majority here explains, our decision in *Honey* "shields completed ballots [cast in person] and digital copies thereof from RTKL requests once those ballots have been . . . recorded through a voting machine."[5] Practically, that holding permanently prevents cast-in-person ballots and their digital representations from becoming publicly available. Once within a voting machine, always within a voting machine, and forever nonpublic.

---

[3] Added by the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.1.

[4] I take no position on the correctness of our decision in *Honey* because I had not yet joined the Court when my learned colleagues heard and considered that matter.

[5] *Previte v. Erie Cnty. Bd. of Elections*, ___ A.3d ___ (Pa. Cmwlth., No. 814 C.D. 2023, filed July 31, 2024) (Majority Opinion), slip op. at 12.

MSW-2

This case presents a request for absentee and mail-in ballots, not for ballots cast in person.[6] And we reach a result directly opposed to *Honey*: images of absentee and mail-in ballots *are* available through the RTKL after being cast and tabulated, even though ballots cast in person are not.[7] This is because after Section 308 of the Election Code initially provided an exception to disclosure for the contents of voting machines, the Code was twice amended to address mail-in and absentee ballots specifically. Section 1309(a) (regarding absentee ballots)[8] was added in 1951, and Section 1307-D(a) (regarding mail-in ballots)[9] was added in 2019. Both provide that the relevant type of ballot (absentee and mail-in, respectively) is "designated and declared to be [a] public record[]." The Majority correctly concludes that these later amendments effectively override Section 308's protection of the contents of voting machines.[10]

In our cases on RTKL requests for ballots or ballot images, our Court has done its best to faithfully construe the Election Code based on its text, including

---

[6] Appellant Michelle Previte (Previte) initially requested electronic images of "polling place ballots"—i.e., ballots cast in person—also, but that issue is not before us. Majority Opinion, slip op. at 2. I read our Majority's REVERSED IN PART order as being limited to the issue of absentee and mail-in ballots, leaving undisturbed (thus effectively affirming in part) any portion of the trial court's disposition that denied Previte's request for images of "polling place" ballots cast in person, which the Majority refers to as "Item 3" of Previte's request. *See* Majority Opinion, slip op. at 2, 13.

[7] *See* Majority Opinion, slip op. at 13.

[8] Added by the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.9(a).

[9] Added by the Act of October 31, 2019, P.L. 552, 25 P.S. § 3150.17(a).

[10] The Majority applies the specific-controls-the-general interpretive principle from our Statutory Construction Act of 1972 to reach this conclusion. *See* Majority Opinion, slip op. at 12 (quoting 1 Pa. C.S. § 1933). In my view, it is more significant that the amendments requiring disclosure of mail-in and absentee ballots are later-in-time enactments, and thus should be read to modify the earlier-in-time Section 308 to the extent they conflict with it, even without an express intent therefor. *See* 1 Pa. C.S. §§ 1934, 1936. Either way, these amendments, fairly construed, require that absentee and mail-in ballots and images thereof are public.

the relevant statutory definitions the General Assembly has afforded us within the Code itself. Where those are absent (as they often are) we have resorted to dictionaries. *See, e.g.*, *Honey*, 312 A.3d at 951-52 (using 2024 dictionaries to define the undefined 1937 statutory term "voting machine"). And where, as here, we find irreconcilable conflict within the Code, we have employed canons for resolving those conflicts. These tools of construction are permissible and important, but they are not "the best" indication of legislative intent—that is always the explicit text of the statute. *Harmon v. Unemployment Comp. Bd. of Rev.*, 207 A.3d 292, 304 (Pa. 2019). In enacting Sections 1309(a) and 1307-D(a) of the Code, the General Assembly could have given us the best indication of its intent by explicitly writing into the amendments that Section 308's "contents of voting machines" provision does not apply to absentee and mail-in ballots in the same way that it does to in-person ballots. It did not do so, and the Court's construction here is emphatically not based on the express terms of the Code alone. Nevertheless, what the Court concludes is likely the best approximation of what the General Assembly intended. If not, the General Assembly is, theoretically at least, "quite able to address what it believes is a judicial misinterpretation of a statute." *Hunt v. Pa. State Police*, 983 A.2d 627, 637 (Pa. 2009). In fact, the General Assembly is obligated to consider whether it disagrees with our holding here when it next amends the Election Code, lest this interpretation "become part of the subsequent legislative enactment" based on its failure to act. *Verizon Pa., Inc. v. Commonwealth*, 127 A.3d 745, 757 (Pa. 2015).

The Court's decision—that absentee and mail-in ballots and images of them are available through the RTKL once removed from a voting machine—treats those who vote by mail or absentee ballot differently from those who vote in person.

(The latter's ballots are forever nonpublic once placed into an optical scanner.) In my view, the General Assembly should consider whether it intended that result, which flows from our holdings here and in *Honey*.

In general, a classification that publicly discloses some ballots and not others, based solely on the manner in which the voter has offered to vote or cast the ballot, will be subject to at least rational-basis scrutiny. There must be some "legitimate state interest or public value" in treating the ballots differently. *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1211 (Pa. 2020). Is there some interest in keeping ballots cast in person permanently nondisclosed, while disclosing other ballots publicly? As the Majority notes, disclosing already-voted ballots risks inadvertently identifying voters, and Sections 1309(a) and 1307-D(a) attempt to mitigate that risk.[11] Perhaps that risk is worth bearing (and mitigating) to pursue the important end of election transparency. *But see Honey*, 312 A.3d at 958 (Wallace, J., dissenting) (noting that "Article VII, [S]ection 4 of the Pennsylvania Constitution expressly enshrines the secret ballot" and that the ballot record at issue in *Honey* was "randomized, which alleviate[d] concerns that public inspection would reveal an individual voter's selections"). But why would the General Assembly subject *only* absentee and mail-in voters to the risk of inadvertent identification, while insulating in-person voters from the same risk?

In-person voting, mail-in voting, and absentee voting are all constitutional—and equally legitimate—ways to vote. *McLinko v. Dep't of State*, 279 A.3d 539, 582 (Pa. 2022), *cert. denied sub nom. Bonner v. Chapman*, 143 S. Ct. 573 (2023). The Pennsylvania Constitution "does not establish in-person voting as an elector qualification or otherwise mandate in-person voting." *Id.* at 582. The

---

[11] *See* Majority Opinion, slip op. at 11 n.11 & accompanying text.

MSW-5

right to vote is a fundamental right for equal protection purposes. *See Banfield v. Cortes*, 110 A.3d 155, 178 (Pa. 2015). Thus, burdens on the right to vote confront heightened scrutiny, and the state may enact only "*reasonable*, *non-discriminatory* restrictions to ensure honest and fair elections." *Id.* at 176-77 (emphasis added). Disclosing ballots voted by one method, while forbidding disclosure of ballots voted by another equal method, may unreasonably burden the right to vote or burden it in a discriminatory way.[12] Although no constitutional challenge of this nature is now before us, our decisions are cause for legislative scrutiny of the Election Code's requirements for public disclosure of ballots cast by different methods of voting.

_____
MATTHEW S. WOLF, Judge

---

[12] As discussed above, disclosure of voted ballots carries inherent risk of inadvertent identification of specific voters, which would vitiate their right to cast a secret ballot. This would predictably chill the franchise by enabling voter intimidation. *See Burson v. Freeman*, 504 U.S. 191, 206 (1992) (describing secret ballot and voting privacy as bulwarks against twin evils of voter intimidation and election fraud); Sunoo Park, *The Right to Vote Securely*, 94 U. COLO. L. REV. 1101, 1122 (2023) ("Without ballot secrecy, voters could be coerced or persuaded to cast votes for an outcome that does not correspond to their true preference—a serious threat to the legitimacy of a democratic election.").